REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1751

September Term, 2015

_____

STATE OF MARYLAND

v.

DONTA NEWTON
a/k/a JASON JONES

_____

Graeff,
Reed,
Moylan, Charles E., Jr.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.

_____

Filed: September 30, 2016

In this appeal, the State of Maryland, appellant, challenges the August 25, 2015, Order of the Circuit Court for Baltimore City, which granted the petition for post-conviction relief filed by appellee, Donta Newton, on the ground that he received ineffective assistance of counsel.[1] The Court granted appellee a new trial on charges of first-degree murder, use of a handgun in a crime of violence, and possession of a regulated firearm by a prohibited person.

On appeal, the State presents the following questions for this Court's review:

1. Did the post-conviction court err in concluding that trial counsel was ineffective in failing to object to the State's rebuttal closing argument?

2. Did the post-conviction court err in concluding that trial counsel was ineffective in strategically agreeing to permit a non-deliberating alternate juror into the jury room in order to avoid another potential mistrial?[2]

3. Did the post-conviction court err in concluding that appellate counsel was ineffective in failing to raise on appeal a waived argument that was not subject to plain error review and, if not, did it err in granting relief in the form of a new trial?

For the reasons set forth below, we answer these questions in the affirmative, and therefore, we shall reverse the judgment of the circuit court.

---

[1] On February 3, 2016, this Court granted the State's Application for Leave to Appeal the circuit court's order.

[2] As appellee notes, the Court's order granting leave to appeal phrased the question that the State could appeal somewhat differently, i.e., "Did the post-conviction court err in awarding Newton a new trial on the ground that the trial court erred in ordering that an alternate juror be present in the jury room during deliberations?" The State's question presented, however, accurately reflects the question presented to this Court in its application for leave to appeal, and it reflects the issue pertinent to this appeal.

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 20, 2004, at approximately 10:00 p.m., the victim, Jerrell Patillo, went to "hang out" with friends in Baltimore City. He and appellee were talking, and appellee unexpectedly shot Mr. Patillo in the back. Mr. Patillo fell to the ground, and appellee attempted to shoot Mr. Patillo again. The gun malfunctioned, however, and Mr. Patillo was able to flee. While Mr. Patillo was running away, appellee shot Mr. Patillo a second time in the left buttock. Mr. Patillo survived the attack.

Appellee was charged in the Circuit Court for Baltimore City with, *inter alia*, attempted first-degree murder and various handgun-related charges. Appellee's first trial began on February 3, 2006. On February 7, 2006, due to various problems with juror absences and scheduling conflicts that prevented a verdict by 12 jurors, the court declared a mistrial.

That same day, the court empaneled another jury, and a second trial began. Shortly after the direct examination of Mr. Patillo, the court excused one of the jurors due to a medical issue.

As discussed in more detail, *infra*, at the conclusion of all the evidence, and clearly in response to the previous mistrial and the departure at that point of one alternate juror, the court stated:

> I have never done this before, but I might suggest that, generally, I excuse the alternate juror, but I need your answer anyway. I am open to any request that you want to keep the alternate in the courtroom or let the alternate go to the Jury Room with instructions not to participate, in light of my past experience in the case.

Both parties agreed to allow the remaining alternate juror to sit in the jury room while the jury was deliberating, with instructions that the alternate juror was not to participate in deliberations unless one of the 12 jury members was excused. The court then instructed the alternate to go into the jury room while the other twelve jurors were deliberating, but the court instructed all the jurors that the alternate was not to participate in the deliberations. The original 12 jurors subsequently issued a unanimous verdict of guilty on all charges.[3]

On February 13, 2006, the circuit court sentenced appellee to life on the attempted murder conviction, plus consecutive time on the other convictions. On February 22, 2008, this Court affirmed appellee's convictions in an unreported opinion. *Newton v. State*, No. 2827, Sept. Term, 2005 (filed Feb. 22, 2008). On June 13, 2008, the Court of Appeals denied appellee's petition for writ of certiorari. *Newton v. State*, 405 Md. 65 (2008).

On March 16, 2012, appellee filed a petition for post-conviction relief. He raised the following grounds in support of his petition:

A. Ineffective assistance of counsel because trial counsel:

1. failed to object to an alternate juror being present in the jury deliberation room during jury deliberations;

2. failed to object to inadmissible evidence including, hearsay evidence, leading question and Detective Nicholson's opinion that it was not unusual for a victim not to know why he was shot;

3. failed to object to erroneous jury instructions as to reasonable doubt, attempted first-degree murder, attempted second-degree murder and possession of a handgun;

4. failed to object to the State's highly prejudicial closing argument that the prosecutor did not call more witnesses to testify for fear of

---

[3] The record reflects that the jury reached a verdict after 2 hours and 20 minutes.

retaliation, when the State admitted there was no evidence that any of the threats could be traced to petitioner;

5. elicited harmful testimony suggesting Petitioner's participation in a drug selling organization; and

6. failed to move to strike a juror who stated that he suffered from depression and continuing on the jury would cause him to miss a long held doctor's appointment to address the condition.

B. The trial court and appellate court erred in denying Petitioner's motion to dismiss the case based on double jeopardy; there was no manifest necessity to declare a mistrial in the first trial and appellate counsel erred in failing to raise the issue on appeal.

C. The trial court erred in ordering the alternate juror to be present during deliberations and appellate counsel erred in failing to raise the issue on appeal.

D. Petitioner is entitled to a new trial in light of the cumulative effect of the errors alleged.

At the subsequent hearing in the Circuit Court for Baltimore City, defense trial counsel, who had been in practice for more than 40 years and had tried more than 500 felony cases, addressed the issue of the alternate juror. He testified that he had a reason for not objecting to the alternate going into the jury room, explaining that, in addition to the fact that the judge, whom he respected, suggested it, he did not want another mistrial if one of the original 12 jurors was unable to continue. Counsel believed that there was a "significant chance" that appellee would be acquitted of the charges, based on his belief that the trial had gone well, as well as his conversations with jurors after the first trial, who indicated that they "were 10 to 2 for acquittal and moving in that direction."

On February 22, 2013, the circuit court granted appellee's petition for post-conviction relief in the form of a new trial, finding that appellee's trial counsel rendered

ineffective assistance of counsel because he failed to object to: (1) "the presence of an alternate juror during jury deliberations"; and (2) "the State's closing arguments." Additionally, it found that appellee's appellate counsel was ineffective in failing to "raise the issue of the alternate juror being present in the deliberation room on appeal."

On March 25, 2013, the State filed an Application for Leave to Appeal. On July 22, 2014, this Court issued an order remanding the case to the circuit court to consider, with respect to permitting the alternate juror to be present during jury deliberations, "whether trial counsel's representation was not ineffective because he had a valid tactical reason for not objecting to the trial judge's ruling."

On March 31, 2015, the circuit court held another post-conviction hearing. On August 25, 2015, the circuit court issued a second Memorandum Opinion and Order, again granting appellee a new trial on ground that his attorneys were ineffective. In addition to its previous findings, the court found that, although trial counsel "may have had a tactical reason for not objecting to" the alternate juror being present in the deliberation room, it was not based on a "valid tactical or strategic reason." The court also found that appellee was prejudiced, given that there was no evidence to rebut the "presumption of prejudice" that occurs when an alternate is present in deliberation.

On September 21, 2015, the State filed a second Application for Leave to Appeal. This Court granted the application on February 3, 2016.

Additional facts will be discussed as necessary in the discussion that follows.

# STANDARD OF REVIEW

Recently, in *State v. Smith*, 223 Md. App. 16, 26-27 (2015), this Court set forth the applicable standard for reviewing claims of ineffective assistance of counsel on appeal from a grant of post-conviction relief:

> The Sixth Amendment to the United States Constitution guarantees all criminal defendants the right to the assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). Both the United States Supreme Court and the Court of Appeals have recognized that "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970); *Mosley v. State*, 378 Md. 548, 557 (2003). In order to prevail on a claim of ineffective assistance of counsel, a defendant must establish that trial counsel's performance was constitutionally deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687; *Mosley*, 378 Md. at 557.

> In discerning whether counsel's performance was deficient, we start with the presumption that he or she "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690; *Bowers v. State*, 320 Md. 416, 421 (1990). Our review of counsel's performance is "highly deferential." *Kulbicki v. State*, 440 Md. 33, 46 (2014). We look to whether counsel's "representation fell below an objective standard of reasonableness." *Harris v. State*, 303 Md. 685, 697 (1985). We assess reasonableness as of "the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

> To satisfy the prejudice prong of *Strickland*, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The ultimate inquiry is whether "'counsel's errors were so serious as to deprive [the petitioner] of a fair trial, a trial whose result is reliable.'" *Oken v. State*, 343 Md. 256, 284 (1996) (quoting *Strickland*, 466 U.S. at 687).

> Determinations by the post-conviction court regarding ineffective assistance of counsel claims are mixed questions of law and fact. *State v. Purvey*, 129 Md. App. 1, 10 (1999). We will not disturb the factual findings of the post-conviction court unless they are clearly erroneous. *Evans v. State,* 151 Md. App. 365, 374 (2003); *State v. Jones*, 138 Md. App. 178, 209 (2001).

We will make our own independent analysis, however, based on our own judgment and application of the law to the facts, of whether the State violated a Sixth Amendment right. *Jones*, 138 Md. App. at 209. Absent clear error, we defer to the post-conviction court's historical findings, but we conduct our own review of the application of the law to the defendant's claim of ineffective assistance of counsel. *Evans*, 151 Md. App. at 374 (citing *Cirincione v. State*, 119 Md. App. 471, 485 (1998)).

(Parallel citations omitted.). Thus, to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show *both* that counsel's performance was deficient and that prejudice resulted.

## DISCUSSION

## I.

### Closing Argument

The State's first contention is that the post-conviction court erred in ruling that appellee received ineffective assistance of counsel due to trial counsel's failure to object to a portion of the State's rebuttal closing argument. In this argument, the prosecutor, in response to defense counsel's argument that the State presented no witnesses to the shooting except the victim, stated that other witnesses did not want to get involved because they did not want retaliation. Appellee contends that his counsel was ineffective in failing to object to the prosecutor's comments because they were "incompetent, inadmissible, and highly prejudicial."

The State contends that the rebuttal argument was not improper argument, and defense counsel's lack of objection shows that the comments were not unfairly prejudicial. In any event, the State argues that, even if the prosecutor's remarks were improper, they

were "brief" and "relatively innocuous," and therefore, the comments did not prejudice appellee, and counsel's failure to object did not constitute ineffective assistance of counsel.

## A.

### Proceedings Below

At trial, the State called only two witnesses in its case-in-chief, the victim, Mr. Patillo, and Detective Daniel T. Nicholson, IV, the detective who responded to the shooting. During direct examination of Detective Nicholson, the following colloquy occurred, addressing why the State had so few witnesses:

[PROSECUTOR:] Were there other people who saw the shooting?

[DETECTIVE:] Yes, ma'am.

[PROSECUTOR:] And did any of them wanna [sic] come forward?

[DETECTIVE:] No, ma'am.

[PROSECUTOR:] Detective, in your history as being a Baltimore City police officer and detective, is this common for people not to want to come forward?

[DEFENSE COUNSEL:] Objection.

THE COURT: Overruled.

[DETECTIVE:] It's very common.

[PROSECUTOR:] Detective, also in your experience as a Baltimore City police officer and detective, is it common for people to give you false information at the scene so that they don't have to be involved?

[DEFENSE COUNSEL:] Objection.

THE COURT: Overruled.

[DETECTIVE:] All the time.

[PROSECUTOR:] And do you have any reasons for that?

[DETECTIVE:] Fear for retaliation for themselves or their loved ones who live in that area or possibly on that block.

During closing argument, defense counsel noted that the police went to the scene of the crime and "talked to everybody [they] could." He noted, however, that the only witness to the crime presented by the State was the victim. Counsel stated:

We don't hear anything from anybody else. We don't know anything from anybody else.

* * *

The issue is, was [appellee] there that night, and there is nothing other than this man Mr. Patillo saying so, and you are left over and over and over again with this great big hole.

In the State's rebuttal closing argument, the prosecutor responded to defense counsel's comments as follows:

The best evidence, Ladies and Gentlemen, is what you have. You have the individual who says this is who shot me. He described him. He described how he was shot, where he was shot, all of which is consistent with what is on the body and the crime scene evidence we do have . . . . Detective Nicholson clearly stated that there [were] a lot of people giving information. They didn't want to be involved. They don't want a retaliation. They don't want to come to court.

Ladies and Gentlemen, please use your common sense, please use your knowledge of what you heard here, please use your knowledge from reading newspapers, watching the news in Baltimore City. Ladies and Gentlemen, why do people not want to come to court? Why do people not want to testify? You know it, and I know it. Mr. Patillo came to testify because the worst has already happened to him, nothing worse could happen.

There was no objection to these comments.

In his post-conviction petition, appellee argued that his trial counsel was deficient because he did not object when the "State made improper rebuttal arguments by blaming

-9-

its lack of identification witnesses on possible eyewitness' fear of retaliation."[4] The post-conviction court agreed that trial counsel was deficient, and it concluded that the deficiency resulted in prejudice to appellee. The court explained:

> The State urged jurors to use their knowledge from newspapers and from watching the news in Baltimore City. Those statements invited the jury to speculate about information outside of the evidence presented at trial and were beyond the bounds of fair comment. The State's closing remarks were likely to have influenced the jury, causing prejudice to [appellee's] case.

**B.**

**Closing Argument Generally**

It is well established that "'attorneys are afforded great leeway in presenting closing arguments to the jury.'" *Pickett v. State*, 222 Md. App. 322, 329 (2015) (quoting *Degren v. State*, 352 Md. 400, 429 (1999). *Accord Sivells v. State*, 196 Md. App. 254, 270 (2010), *cert. dis'd as improv. granted*, 421 Md. 659 (2011). "'As to summation, it is, as a general rule, within the range of legitimate argument for counsel to state and discuss the evidence and all reasonable and legitimate inferences which may be drawn from the facts in evidence; and such comment or argument is afforded a wide range.'" *Donati v. State*, 215 Md. App. 686, 730 (quoting *Wilhelm v. State*, 272 Md. 404, 412 (1974)), *cert. denied*, 438 Md. 143 (2014).

Nevertheless, there are limitations upon the scope of a proper closing argument. The Court of Appeals has emphasized that "'counsel should not be permitted by the court, over

---

[4] Although trial counsel testified at both post-conviction hearings, he did not testify regarding why he did not object to the prosecutor's rebuttal comments regarding witnesses' fear of retaliation.

proper objection, to state and comment upon facts not in evidence or to state what he could have proven.'" *Pickett*, 222 Md. App. at 330 (quoting *Wilhelm*, 272 Md. at 413). *Accord Lee v. State*, 405 Md. 148, 166 (2008) (improper to make comments "that invite the jury to draw inferences from information that was not admitted at trial"). In other words, although "'liberal freedom of speech should be allowed,'" arguments of counsel "'are required to be confined to the issues in the cases on trial, the evidence and fair and reasonable deductions therefrom, and to arguments to opposing counsel.'" *Id.* at 163 (quoting *Wilhelm*, 272 Md. at 413).

"Reversal is required, however, only 'where it appears that the remarks of the prosecutor actually misled the jury or were likely to have misled or influenced the jury to the prejudice of the accused.'" *Pickett*, 222 Md. App. at 330 (quoting *Spain v. State*, 386 Md. 145, 158 (2005)). As the Court of Appeals explained in *Spain*, 386 Md. at 159:

> When assessing whether reversible error occurs when improper statements are made during closing argument, a reviewing court may consider several factors, including the severity of the remarks, the measures taken to cure any potential prejudice, and the weight of the evidence against the accused. *U.S. v. Melendez*, 57 F.3d 238, 241 ([2d] Cir. 1995); see also *Henry v. State*, 324 Md. 204, 232, 596 A.2d 1024, 1038 (1991) (finding that "[i]n determining whether reversible error occurred, an appellate court must take into account '(1) the closeness of the case, 2) the centrality of the issue affected by the error, and 3) the steps taken to mitigate the effects of the error'" (citations omitted)).

### C.

### Analysis

The State contends that defense counsel did not render ineffective assistance of counsel in failing to object to the rebuttal closing argument for two reasons. First, the State

argues that the failure to object was not deficient conduct because the prosecutor's remarks were proper. It asserts that "the comments were supported by Detective Nicholson's testimony that other witnesses to the shooting were unwilling to come forward, and that it is not unusual for witnesses to be unwilling to cooperate because of a general fear of retaliation." Moreover, the State contends that the comments were made "in direct response to defense counsel's criticism that the State did not produce any other witnesses besides [Mr.] Patillo," and pursuant to the "opened door doctrine," a prosecutor may introduce "otherwise irrelevant evidence in order to respond to an argument made by defense counsel." Finally, it asserts that the prosecutor's argument was "a matter of common knowledge," stating that "[w]itnesses' unwillingness to cooperate with the police because of fear of retaliation has long been the subject of newspaper and television coverage." It disagrees with the circuit court's conclusion that the statements could lead the jury to speculate about information outside the record, stating that the prosecutor's "argument was directed to one point—the general fear of retaliation that makes witnesses to violent crime reluctant to cooperate with police. There was simply nothing to speculate about."

Second, the State asserts that, even if the remarks were improper and defense counsel was deficient in failing to object to them, the remarks were "not so prejudicial as to warrant a new trial." It contends that the disputed remarks constituted only a small fraction of the prosecutor's closing remarks, and she "did not in any way suggest that

-12-

[appellee] had threatened any witnesses or was responsible for the witness[es]' lack of cooperation."

Appellee argues that the post-conviction court properly found ineffective assistance of counsel based on defense counsel's failure to object to the comments in the State's rebuttal closing argument. He disagrees with the State that defense counsel "opened the door" to the comments, stating that "[p]ointing out a lack of evidence does not 'open the door' to inadmissible and impermissible comments by the State." He contends that the comments about retaliation were improper because "there was absolutely no evidence whatsoever that [appellee] threatened" anyone, and "[a]ny mention of retaliation was completely inadmissible, because it was totally irrelevant absent a connection with [appellee]." He asserts that the State "attempted to inflame the jury's emotions by imploring the jury to think about stories in the newspaper and on television news shows regarding retaliation against witnesses." He disputes the State's assertion that the comments were proper given the common knowledge of the jury regarding the fear of retaliation, asserting that the contention "does not address the inadmissibility of threats of retaliation absent a connection to [appellee]."

In addressing this issue, we note that we disagree with appellee's argument that the comments here were not "about the general reluctance of witnesses to come forward," but rather, they were an argument that "the State failed to call eyewitnesses because [appellee] would retaliate against them." The prosecutor said nothing to indicate that appellee was responsible for the witnesses' fear. To the contrary, the State's reference to newspapers

and television made clear that she was referring to a general fear of retaliation, as opposed to appellee specifically, as the cause of the State's lack of witnesses willing to testify. The prosecutor was merely explaining that the jurors should not be surprised by the lack of witnesses in this case because it is common for witnesses to refuse to cooperate. We conclude that this was a fair response to defense counsel's criticism regarding the State's lack of witnesses, especially given Detective Nicholson's testimony that other witnesses did not want to come forward, a common scenario given witnesses' "fear for retaliation."[5]

Under these circumstances, we cannot conclude that defense counsel's failure to object was "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Because defense counsel was not deficient in failing to object to the rebuttal argument, the circuit court erred in finding ineffective assistance of counsel in this regard.

## II.

### Alternate Juror's Presence During Deliberation

The State next contends that the post-conviction court erred in ruling that appellee's trial counsel was ineffective "in strategically agreeing to permit a non-deliberating alternate

---

[5] The prosecutor's brief comment asking the jurors to use their common sense, as well as other knowledge from "reading newspapers, watching the news," to assess "[w]hy do people not want to testify," was not, as appellee asserts a "highly improper" reference to a specific case of retaliation. Rather, the prosecutor's reference reflected the common knowledge that witnesses in Baltimore City often are not willing to cooperate with the police in criminal trials because of fear of retaliation. *See Wilhelm v. State*, 272 Md. 404, 440 (1974) (prosecutor's comments regarding number of murders in Baltimore City in last year not improper because "widespread publicity" made that fact common knowledge).

juror into the jury room in order to avoid another potential mistrial." It asserts that the trial strategy to acquiesce to the presence of the alternate in the jury deliberation room was reasonable because trial counsel "believed, at the time, that it was in the best interests of his client." Moreover, the State contends that the circuit court erred in ruling that there was a "presumption of prejudice that the State was required to rebut," noting that, "under *Strickland*, there is no presumption of prejudice and it is [appellee], not the State, who is required to demonstrate that counsel's strategic decision affected the outcome of the proceeding." Because appellee "did not attempt to demonstrate, much less succeed in demonstrating, actual prejudice, the post conviction court erred in granting post conviction relief on this issue."

Appellee argues that, pursuant to the Maryland Rules and *Stokes v. State*, 379 Md. 618 (2004), it was error to permit an alternate juror to be present in the jury room during deliberations. He contends that the post-conviction court correctly determined that trial counsel rendered deficient performance in failing to object to the presence of the alternate in the deliberation room, and there was "no reasonable strategic reason for failing to do so." Appellee argues that "trial counsel's performance was not based upon a valid tactical decision," but rather, "it was based upon a misunderstanding of the law," and "ignorance of the law cannot be the foundation" of a "reasonable" trial strategy.

With respect to prejudice, appellee argues that the trial court did apply a *Strickland* standard of prejudice. In any event, he contends that, pursuant to *Stokes*, a presumption of prejudice is permissible when an alternate is in the jury room during deliberations.

## A.

## Proceedings Below

Directly after the court instructed the jury, the following colloquy occurred:

THE COURT:  I have never done this before, but I might suggest that, generally, I excuse the alternate juror, but I need your answer anyway.  I am open to any request that you want to keep the alternate in the courtroom or let the alternate go to the Jury Room with instructions not to participate, in light of my past experience in the case.

[PROSECUTOR:]  Your Honor, I would not object to the second one with instructions not to participate unless we excuse a juror.  I agree.

THE COURT:  Send all of them to the jury room?

[PROSECUTOR:]  Yes.

[DEFENSE COUNSEL:]  Yes.

THE COURT:  With the instruction not to participate?

[PROSECUTOR:]  Uh-huh.

[DEFENSE COUNSEL:]  Yes.

THE COURT:  All right.

[DEFENSE COUNSEL:]  Fine.  I'm just thinking maybe you could expand on that a little bit and tell them why --

THE COURT:  Alternates are not to participate in the discussion.

[DEFENSE COUNSEL:]  Fine.

[PROSECUTOR:]  That's fine, Your Honor.

After closing argument, the court gave the following instruction regarding the alternate juror:

Now, I'm going to ask that the alternate juror go to the jury room, stay with the jury until they reach a decision.  However, you are the alternate juror, therefore, you are not to participate in any of the discussion.  Sit and

-16-

listen carefully and the reason for that is, heaven forbid something should happen that causes one of the twelve jurors not to be able to return or continue, you could become the 12th juror. Please, the 12 jurors, understand that the alternate is not to be involved in the discussion, so don't let her. I think everybody will understand to participate in that, perhaps, she needs to be there to hear everything going on, so that in the unlikely event she is needed as a juror she can step right in without missing a beat, so to speak.

Thereafter, the jury, including the alternate, retired to the jury room for deliberation.

Approximately 2 hours and 20 minutes later, the jury reached its verdict. Before the jury read its verdict in court, the following colloquy at the bench occurred:

[PROSECUTOR:] Your Honor, any verdict of guilty, I don't know what is appropriate to make sure Juror No. 13, alternate, did not speak or did not participate. I want to put on the record just to make sure. I don't know if that is appropriate or not.

[DEFENSE COUNSEL:] I don't see the need for it. You instructed. You don't have an indication to the contrary.

THE COURT: I agree.

[PROSECUTOR:] I just wanted to make it clear. I just didn't know.

THE COURT: I see.

At the November 20, 2012, post-conviction hearing, appellee's trial counsel was asked about the decision to permit the alternate juror to sit in on the jury's deliberations. He stated that he did not have a specific recollection why he did not object to the alternate juror being permitted to be present during deliberations, but he could surmise why he did not object. The following then occurred:

[PC COUNSEL:] Why do you surmise?

[TRIAL COUNSEL:] Because there had been a mistrial because of a juror's failing to show up; because I thought the case would -- to use the vernacular, playing in our direction, the Defense direction, and I didn't want another mistrial. And [the trial judge] suggested it, and I have a great deal of respect

having begun my practice in '71, probably beforehand, then I saw no harm and only good coming from it.

[PC COUNSEL:]  So is it your testimony that you didn't object to him sending the alternate juror back to deliberations because you didn't want a mistrial?

[TRIAL COUNSEL:]  Correct.

[PC COUNSEL:]  Okay.  And are [you] familiar with Maryland Rule 4-312 regarding what's to be done with alternate jurors at the conclusion of the case and the beginning of deliberations?

[TRIAL COUNSEL:]  Yes.

[PC COUNSEL:]  Okay.  And what does that rule provide?

[TRIAL COUNSEL:]  They're to be dismissed.

[PC COUNSEL:]  Okay.  So can you explain where your fear of a mistrial came from?

[TRIAL COUNSEL:]  If we lost a juror again.

[PC COUNSEL:]  During deliberations?

[TRIAL COUNSEL:]  Yes.

The court then asked defense counsel to read the last four lines of his letter to the Appellate Division of the Public Defender's Office.  Counsel complied, reading:  "We proceeded to empanel a new jury which found [appellee] guilty.  I spoke with members of the first jury after they were released and the indication was they were 10 to 2 for acquittal and moving in that direction."

Counsel stated that he believed that the evidence against appellee in the second trial was the "[s]ame as the first trial," and he believed that he had a chance of an acquittal with the second jury.  When asked what that belief was based on, counsel stated: "It was, one,

-18-

an analysis of the case, and two, the discussions with the jurors after the first mistrial." On cross-examination, defense counsel testified that allowing the alternate juror to go into the deliberation room was trial strategy, and he thought appellee "had a significant chance of being found not guilty."

On March 31, 2015, after this Court remanded the case to the circuit court to address specifically whether defense counsel had a "valid tactical reason" for not objecting to the alternate juror going to the jury room during deliberations, the circuit court held a second post-conviction hearing. Trial counsel again testified that he did not object to the alternate juror being present in the jury room because he wanted to avoid another mistrial. Counsel stated that, at the time, he was not aware of *Stokes*, which post-conviction counsel summarized as holding "that the presence of an alternate was a fundamental error of constitutional proportion regardless of whether the defense counsel consented or failed to object to the presence of the alternate." The following then occurred:

> [PC COUNSEL:] Okay, so had you known about the Stokes case that said that if there was an alternate juror present during deliberations that that would invalidate the verdict, would you have acquiesced to the presence of an alternate in the deliberations?
>
> * * *
>
> [TRIAL COUNSEL:] Probably.
>
> [PC COUNSEL:] Okay. Would you have taken [the trial judge] up on his alternate theory of allowing the alternate juror to stay in the courtroom during deliberations in case another juror, a regular juror would be --
>
> THE COURT: Well, let me make sure I understand. If you were familiar with Stokes -- is that what you're asking him?
>
> [PC COUNSEL:] Yes.

THE COURT: Would you still let the alternate go in the room, and you said yes?

[TRIAL COUNSEL:] No, I said probably not.

\* \* \*

[TRIAL COUNSEL:] I mean, if you know about Stokes and it's almost like you would get a free shot that you could, but that would be kind of unethical if you knew about Stokes to allow that free shot to happen. That's what [is] just going through my head, you know, it's kind of a tactical move but it's an unethical tactical move, so I wouldn't do it.

[PC COUNSEL:] So would it be a valid tactical decision? Valid?

[TRIAL COUNSEL:] Well, with the knowledge of Stokes, no.

On cross-examination, the prosecutor established that counsel had testified in the prior hearing that he did not object to sending "the 13th juror" to the jury room during deliberations as a matter of strategy because he thought there was "a good chance of winning" the case. There had been "a lot of jury issues," and he thought "it was a good idea to send the juror back."

After the hearing concluded, the circuit court issued a second memorandum opinion and order granting appellee's petition for post-conviction relief. The post-conviction court concluded that "*Stokes* clearly establishes that the presence of an alternate juror in the deliberation room is a fundamental irregularity of Constitutional proportion," and therefore, it "is legal error." The court stated:

Even though trial counsel may have had a tactical reason for not objecting to the court instructing the alternate juror to be present in the deliberation room, it was not based on a valid tactical or strategic reason. Therefore, in failing to object to the alternate's presence in the deliberation room, trial counsel acted deficiently. Hence, trial counsel's representation was ineffective in

-20-

that trial counsel did not have a valid tactical reason for failing to object to the presence of the alternate juror in the jury deliberation room.

Furthermore, the presence of alternate jurors during deliberations creates a presumption of prejudice. *Hayes v. State*, 355 Md. 615 (1999). No evidence was presented to rebut this presumption of prejudice created by the alternate's presence during deliberations in [appellee's] case.

**B.**

**Analysis**

The State makes multiple arguments in support of its contention that "the post-conviction court erred in concluding that trial counsel was ineffective in strategically agreeing to permit a non-deliberating alternate juror into the jury room in order to avoid another potential mistrial." We begin with the State's contention that the circuit court's conclusion that defense counsel did not have a valid tactical reason to acquiesce to the alternate's presence in the jury room was erroneous because it was based on the "mistaken belief that *Stokes* prohibits the presence of more than 12 jurors in the jury room during deliberations under any circumstances, including by stipulation of the parties." In that regard, the State asserts:

> *Stokes* does not stand for the proposition urged by the court below that trial counsel cannot strategically agree to the presence of a non-deliberating juror in the jury room. In *Stokes*, the Court of Appeals held that a trial court committed reversible error when it permitted alternate jurors *to participate in deliberations*, *over defense counsel's objection*. *Stokes* did not address the question raised in this appeal, whether defense counsel may stipulate to the presence of more than 12 jurors in the jury room. This question was expressly left open in *Stokes*: "We *express no opinion as to whether a defendant may stipulate to more than twelve persons on the jury*."

(citations omitted.).

-21-

Appellee argues that the post-conviction court "correctly held that the presence of third parties during jury deliberations is not permitted and is grounds for a new trial." He contends that the "Court of Appeals in *Stokes* held that reversible, incurable error occurs when an alternate is permitted in the jury deliberation room," and that trial counsel was deficient for not objecting to the presence of the alternate juror in this case. He asserts that, "[h]ad trial counsel objected, this case would be exactly on point with *Stokes*, and reversal would be mandated."

As the parties note, the Court of Appeals in *Stokes v. State*, 379 Md. 618, 629 (2004), held that it was error for the trial court, over the objection of the defendant, to send an alternate juror into the jury room during deliberations. The Court stated that "[t]he Maryland Rules, implementing the right to a jury trial, clearly distinguish between alternate jurors and regular jurors and no rule or statute permits more than twelve into the jury room during deliberations." *Id.* at 633.[6] The Court noted that alternate jurors have "been likened to . . . stranger[s] to the proceedings," stating: "'Once the prescribed number of jurors becomes "the jury," then, and immediately, any other persons are strangers to its proceedings. Their presence destroys the sanctity of the jury.'" *Id.* at 633-34 (quoting *United States v. Beasley*, 464 F.2d 468, 469 (10th Cir. 1972)). In support of its holding,

---

[6] Maryland Rule 4-311(b) provides that a jury in a criminal case "shall consist of 12 persons unless the parties stipulate at any time in writing or on the record that the jury shall consist of any number less than 12." Rule 4-312(g)(3) provides: "When the jury retires to consider its verdict, the trial judge shall discharge any remaining alternates who did not replace another jury member."

the Court stated that "almost every court that has considered the issue of the presence of an alternate juror during deliberations has found it to be error." *Id.* at 634.

The Court then addressed the consequences of such an error, noting that other courts were divided on whether the error was *per se* reversible error, prejudice was presumed, or harmless error concepts applied. *Id.* The Court ultimately determined that the presence of alternate jurors during the jury deliberations created a presumption of prejudice. Concluding that "[j]ury deliberations are private and are to be conducted in secret," the Court held that "[t]he presence of alternate jurors who have no legal standing as jurors injects an improper outside influence on jury deliberations and impairs the integrity of the jury trial. Prejudice must be presumed where alternates breach the sanctity of the jury room." *Id.* at 638.

Pursuant to *Stokes*, there is no question that it is error to send an alternate juror into the jury room during deliberations, even with instructions not to participate in deliberations. *Accord Grimstead v. Brockington*, 417 Md. 332, 351-55 (2010) (allowing alternate jurors in jury room during deliberations in civil case required reversal). And if that occurs and the defense objects, prejudice will be presumed on direct appeal.

The State argues, however, that *Stokes* is not dispositive in the present case, for several reasons. Initially, it asserts that *Stokes* "specifically left open the issue of whether a defendant may stipulate to the presence of more than 12 jurors." In support, it relies on the following language set forth by the Court in a footnote:

> Unlike several other states, Maryland permits the substitution of an alternate juror only before the jury begins to deliberate on the case, and not after

-23-

deliberations have commenced. . . . **We express no opinion as to whether a defendant may stipulate to more than twelve persons on the jury.** In the case *sub judice,* the record is clear that appellant objected to more than the twelve jurors deliberating on the case.

379 Md. at 629 n.5 (citations omitted) (emphasis added).

This language is not helpful to the State in this case. The parties here did not stipulate to more than 12 jurors deliberating on the case. Indeed, the alternate juror was specifically instructed *not* to participate in the deliberations. The record makes clear that the parties never intended for the alternate to participate in deliberations as a thirteenth deliberating juror.

We do agree with the State, however, that *Stokes* did not hold that a defendant cannot, for tactical reasons, agree to a procedure where an alternate juror sits in the jury room during deliberations, and it cannot be read to say that such a situation requires reversal of a conviction. To be sure, the Court cited *State v. Bindyke*, 220 S.E.2d 521, 531 (1975), where the Supreme Court of North Carolina stated that the presence of an alternate during deliberations was a "fundamental irregularity" that vitiates the verdict, even if defense counsel consented. The Court in *Stokes* subsequently stated, however, as follows:

> Since the Supreme Court decision in *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), some jurisdictions have modified this view on the issue, particularly when there was no objection below and the threshold issue on appeal is whether the issue is preserved for appellate review, and then the matter is considered under the plain error doctrine. *See id.* at 739, 113 S.Ct. at 1780, 123 L.Ed.2d at 523 (stating "the issue here is whether the alternates' presence sufficed to establish remedial authority under Rule 52(b), not whether it violated the Sixth Amendment or Due Process Clause"). The issue of preservation for appellate review or waiver is not an issue in the case *sub judice* because appellant objected to the presence of alternate jurors in the jury room.

-24-

*Stokes*, 379 Md. at 639 n.10.[7]

Subsequent to *Stokes*, this Court specifically rejected the argument that a defendant's conviction should be reversed if an alternate juror is present for jury deliberations, when defense counsel failed to object. In *Ramirez v. State*, 178 Md. App. 257, 284-86 (2008), *cert. denied*, 410 Md. 561 (2009), we held that a defendant waived his complaint regarding prejudice due to the presence of an alternate juror by failing to raise this claim in the circuit court. Thus, it is clear that permitting an alternate to be present in the jury room during deliberation does not automatically entitle a defendant to a new trial.

With this background in mind, we turn to the issue presented here, whether counsel's decision to allow the alternate juror to go into the jury room was a valid tactical decision. There is no doubt that it was a tactical decision. As indicated, defense counsel stated that he agreed to the alternate's presence during deliberations because he thought there was a "significant chance" of an acquittal, he wanted to ensure that the second trial did not result in another mistrial, and he "saw no harm and only good coming from" this decision. The question is whether it was a *valid* tactical decision under the *Strickland* test. If so, that is the end of the inquiry.

---

[7] In *United States v. Olano*, 507 U.S. 725, 739 (1993), the Supreme Court stated that "the presence of alternate jurors during jury deliberations might prejudice a defendant in two different ways: either because the alternates actually participated in the deliberations, verbally or through 'body language'; or because the alternates' presence exerted a 'chilling' effect on the regular jurors." The Court held, however, that where the defendants "made no specific showing that the alternate jurors in this case either participated in the jury's deliberations or 'chilled' deliberation by the regular jurors," the error did not amount to "plain error." *Id.* at 739-40.

The State argues that, "[w]hether a trial strategy is reasonable is determined on a case-by-case basis and depends on whether the strategy furthers the defendant's interest, not on whether it is 'legal error.'" It asserts that counsel's decision here was intended to further appellee's interests, and "[t]here was no evidence to rebut the strong presumption that trial counsel's strategic decision made in order to avoid another mistrial was reasonable."

The parties cite no Maryland authority, nor are we aware of any, that directly addresses whether acquiescing to the presence of an alternate juror during deliberations is a valid trial strategy when such a presence is not permitted. The Court of Appeals of Georgia, however, addressed a very similar set of circumstances in *London v. State*, 580 S.E.2d 686 (Ga. Ct. App. 2003).

In *London*, the trial "court expressed its intention to allow [an] alternate juror to witness the jury's deliberations so that the alternate would be privy to the discussion in case a juror had to be excused, thereby avoiding the need to start deliberations anew with the alternate. London's counsel consented to the arrangement." *Id.* at 781. The court subsequently instructed the jury, including the alternate, that the alternate was to "sit through the deliberations," but she was not to participate. *Id.*

After London was convicted of aggravated assault and related crimes, he appealed, arguing that the "trial court erred in allowing an alternate juror to go out with the jury to the jury room and to witness deliberations in violation of" a state statute that prohibited alternate jurors from witnessing the jury's deliberations. *Id.* at 780. The appellate court,

similar to the holding in *Stokes*, agreed that, "if an alternate juror does, in fact, sit in on the jury's deliberations over the defendant's objections, there is a presumption of harm to the defendant that the State must overcome." *Id.* at 781. The court concluded, however, that, "although London would have had the benefit of a presumption of harm under these circumstances if the trial court had sent the alternate juror to witness deliberations over trial counsel's objections, counsel's consent to the arrangement waive[d] this error." *Id.* at 782.

The court also rejected London's argument that trial counsel's failure to object to the presence of the alternate juror during jury deliberations "constituted ineffective assistance of counsel," stating that, as "'a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel.'" *Id.* (quoting *Grier v. State*, 541 S.E.2d 369, 372 (2001)). It explained that, "[d]uring the motion for new trial hearing, trial counsel testified that he did not feel it was necessary to object to the court's plan to allow the alternate juror to witness the deliberations due to the trial court's jury instructions that the alternate was not to participate in deliberations." *Id.* The court held that "[t]rial counsel's strategies and tactics do not constitute deficient performance." *Id.*[8]

_____

[8] The court also held that London did not satisfy the prejudice prong of the *Strickland* test, stating that, "although London would have been entitled to a presumption of harm if counsel had timely objected to the trial court's plan," London was "no longer entitled to this presumption of harm in a claim of ineffective assistance of counsel. Instead, he has the burden of proving that he was prejudiced by counsel's alleged oversight." *London v. State*, 580 S.E.2d 686, 688 (Ga. Ct. App. 2003). Because (continued . . .)

Here, as indicated, the evidence is clear that counsel's acquiescence to the alternate juror remaining in the jury room during deliberations was a tactical decision. And the basis for the decision in this case was stronger than in *London*; counsel believed that this strategy would be beneficial for appellee, believing that he could obtain an acquittal if there was an ultimate verdict, as opposed to risking a mistrial if there was another problem with a juror.

Appellee argues, however, that defense counsel was unaware of the decision in *Stokes*, holding that it was improper to have an alternate juror present during jury deliberations, and "a decision based upon an error of law is not a reasonable trial strategy." He asserts that "ignorance of the law cannot be the foundation" of a "reasonable" trial strategy.

In support, appellee cites *State v. Peterson*, 158 Md. App. 558, 594, 597 (2004), in which Peterson's conviction was reversed for ineffective assistance of counsel, despite that trial counsel testified that he made a strategic decision not to pursue a defense based on battered spouse syndrome. In that case, however, this Court held that the "decision not to introduce battered spouse syndrome evidence was **not** a product of trial strategy; it was a consequence of trial counsel's not being adequately familiar with the law." *Id.* at 597 (emphasis added).

In this case, by contrast, the decision clearly was a matter of strategy, albeit one not sanctioned by law. And it was a strategy that could have worked to the benefit of appellee.

---

(. . . continued) London did not present any evidence that "the alternate juror's presence had any impact on the outcome of his trial," he had not "carried his burden of demonstrating ineffective assistance of counsel." *Id.*

We agree with the State that a strategic decision made under these circumstances is not deficient conduct under the *Strickland* standard. To adopt a rule that a decision based on a misunderstanding of the law is *per se* ineffective assistance of counsel, even if it is a well-reasoned tactical decision under the facts of the case, would put a defendant in a "heads-I-win; tails-you-lose" situation, where an accused could take a position at trial that has the potential to be beneficial, and it if did not work out, he could get a new trial on the ground that it was not a valid tactical decision. *See Chappee v. Vose*, 843 F.2d 25, 33 (1st Cir. 1988) (rejecting the argument that a trial strategy that results in a violation of procedural rules constitutes *per se* deficient representation, and refusing to permit the defendant to "reap a windfall" by creating a "heads-I-win, tails-you-lose" situation); *State v. Peoples*, 141 A.3d 350, 358 (N.J. Super. Ct. App. Div. 2016) (refusing to allow defendant to "build an [ineffective assistance of counsel] claim into his case" because doing so would "guarantee[] him a basis for reversal" in the event of "an adverse verdict"). We decline to adopt such a rule. Counsel here made a tactical decision that he reasonably believed would be beneficial to his client. In light of the high deference that this Court must give to counsel's decision making under *Strickland*, 466 U.S. at 690, and given the strong presumption that counsel's conduct "falls within the wide range of reasonable professional assistance," *id.* at 689, we hold that counsel's conduct was not deficient. Appellee did not receive ineffective assistance of trial counsel.

## III.

### Ineffective Appellate Counsel

The State next argues that the post-conviction court "erred in concluding that appellate counsel was ineffective in failing to raise on appeal" a "claim of error as to the presence of the alternate juror in the jury room." It contends that, "[b]ecause trial counsel affirmatively agreed to permit the alternate juror into the jury room, this claim was not subject to appellate review, even under the plain error doctrine." Therefore, appellate counsel was not ineffective for failing to raise it. We agree.

We begin with a review of the *Strickland* standard as it relates to appellate counsel. The Court of Appeals in *Gross v. State*, 371 Md. 334, 350 (2002), stated:

> [I]n assessing the effectiveness . . . of appellate counsel in failing to raise [claims] on appeal, *Strickland's* performance and prejudice prongs naturally overlap because the questions of whether counsel's performance was adequate and whether it prejudiced the petitioner both will turn on the viability of the omitted claims, *i.e.*, whether there is a reasonable possibility of success. . . .
>
> The Sixth Amendment does not require an attorney to argue every possible issue on appeal. An advocate does render ineffective assistance of counsel, however, by . . . omitting on direct appeal a claim that would have had a substantial possibility of resulting in a reversal of petitioner's conviction. The crucial inquiry is whether confidence in the reliability of the conviction is undermined by the failure to . . . raise the claims on appeal.

(citations omitted).

One factor in determining whether appellee's claim had a possibility of success on appeal is whether that claim was waived at trial. Ordinarily, an appellate court will not decide an issue "unless it plainly appears by the record to have been raised in or decided by the trial court." Md. Rule 8-131(a). *Accord Sutton v. FedFirst Fin. Corp.*, 226 Md.

-30-

App. 46, 80 n.18 (2015), *cert. denied*, 446 Md. 293 (2016) (declining to address an argument that was not made below).

To be sure, appellate courts have discretion under Md. Rule 8-131(a) to address an unpreserved issue.  As the Court of Appeals has explained, however:

> It is a discretion that appellate courts should rarely exercise, as considerations of both fairness and judicial efficiency ordinarily require that all challenges that a party desires to make to a trial court's ruling, action, or conduct be presented in the first instance to the trial court so that (1) a proper record can be made with respect to the challenge, and (2) the other parties and the trial judge are given an opportunity to consider and respond to the challenge.

*Chaney v. State*, 397 Md. 460, 468 (2007).  *Accord Robinson v. State*, 410 Md. 91, 104 (2009) (appellate court's "prerogative to review an unpreserved claim of error, however, is to be rarely exercised and only when doing so furthers, rather than undermines, the purposes of the rule").  Indeed, as we indicated, in *Ramirez*, 178 Md. App. at 285-86, which was decided after appellee noted his appeal in this case, this Court held that the accused waived his right to assert error on appeal regarding the presence of the alternate juror during deliberations when he did not raise the issue in the circuit court.

Given this case law, we agree with the State that, had appellate counsel raised the alternate juror issue on direct appeal, it is unlikely that a court would review the issue under the doctrine of plain error.  This is especially so given that defense counsel affirmatively agreed to the procedure suggested by the Court.  *See Nash v. State*, 191 Md. App. 386, 402-03 (appellant is not entitled to reversal of his conviction based on a procedure to which he stipulated and agreed), *cert. denied*, 415 Md. 42 (2010).  *Accord Gilliam v. State*, 331 Md. 651, 691 (1993) ("As [defendant] did not object to the course of action proposed by

the prosecution and taken by the court, and apparently indicated his agreement with it, he cannot now be heard to complain that the court's action was wrong."), *cert. denied*, 510 U.S. 1077 (1994); *Watkins v. State*, 328 Md. 95, 99-100 (1992) (where party acquiesces in court's ruling, there is no basis for appeal of that ruling), *overruled on other grounds*, *Calloway v. State*, 414 Md. 616 (2010). Under these circumstances, appellate counsel was not ineffective for failing to raise the claim on appeal.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. COSTS TO BE PAID BY APPELLEE.**