Dissenting Opinion by
Getty, J.
Respectfully, I dissent from the Majority’s conclusion that Mr. Newton was not prejudiced by his trial counsel consenting to the presence of an alternate juror during deliberations. To the contrary, I would hold that, by consenting to this arrangement rather than objecting to it, trial counsel prejudiced Mr. Newton by requiring his appellate counsel to show on direct appeal that the alternate either actually participated in the *367 deliberations or exerted a chilling effect on the regular jurors in order to reverse his conviction under United States v. Olano, rather than allowing appellate counsel to establish presumed prejudice under Stokes v. State. In addition, although the Majority does not reach the issue of whether trial counsel’s performance was constitutionally deficient under Strickland v. Washington, I would hold that his performance was deficient because he consented to an arrangement that violated clearly established Maryland law, which had no potential to benefit his client. Therefore, I would hold that, with respect to his trial counsel, Mr. Newton has established both deficient performance and prejudice under Strickland, and thus Mr. Newton is entitled to postconviction relief.[1] Accordingly, I would reverse the judgment of the Court of Special Appeals, and reinstate the judgment of the postconviction court granting Mr. Newton a new trial.
In order to prevail on a claim of ineffective assistance of counsel, a defendant must establish that trial counsel’s performance was constitutionally deficient and that the deficient performance prejudiced the defense. Strickland, 466 U.S. [668,] 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 [ (1984) ]; Mosley [v. State ], 378 Md. [548,] 557, 836 A.2d 678 [ (2003) ].
In discerning whether counsel’s performance was deficient, we start with the presumption that he or she “rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.” Strickland, 466 U.S. at 690, 104 S.Ct. 2052; Bowers v. State, 320 Md. 416, 421, 578 A.2d 734 (1990). Our review of counsel’s performance is “highly deferential.” Kulbicki v. State, 440 Md. 33, 46, 99 A.3d 730 (2014). We look to whether counsel’s “representation fell below an objective standard of reasonableness.” Harris v. State, 303 Md. 685, 697, 496 A.2d 1074 (1985). We assess reasonableness as of “the time of counsel’s conduct.” Strickland, 466 U.S. at 690, 104 S.Ct. 2052.
*368 To satisfy the prejudice prong of Strickland, a defendant must show that “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 694, 104 S.Ct. 2052. The ultimate inquiry is whether “ ‘counsel’s errors were so serious as to deprive [the petitioner] of a fair trial, a trial whose result is reliable.’ ” Oken v. State, 343 Md. 256, 284, 681 A.2d 30 (1996) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052).
State v. Smith, 223 Md.App. 16, 26-27, 115 A.3d 210 (2015) (last alteration in original). I will begin with deficient performance.
Maryland Rule 4—311(b) provides that a jury in a criminal case “shall consist of 12 persons unless the parties stipulate at any time in writing or on the record that the jury shall consist of any number less than 12.” (Emphasis added.) Rule 4-312(g)(3) provides, “When the jury retires to consider its verdict, the trial judge shall discharge any remaining alternates who did not replace another jury member.” (Emphasis added.) No Maryland Rule “or statute permits more than twelve into the jury room during deliberations,” Stokes v. State, 379 Md. 618, 633, 843 A.2d 64 (2004) (emphasis added), and the trial court’s instruction to discharge any alternates at the start of deliberations is mandatory, not discretionary. See Hayes v. State, 355 Md. 615, 635, 735 A.2d 1109 (1999) (“[A]n alternate juror who remains qualified to serve may be substituted for a regular juror who is properly discharged, until such time as the jury enters the jury room to consider its verdict and closes the door. We view the closing of the door as marking the point at which the ability to substitute ends—the effective point at which we consider the jury to have commenced deliberations.” (emphasis added)).
In Stokes, the trial court sent the alternate jurors into the jury room to deliberate during the guilt/innocence phase of a bifurcated trial, over defense objection. Stokes, 379 Md. at 623, 843 A.2d 64. After two hours of deliberations, the jury sent a note to the court asking if “alternates count,” which prompted *369 a discussion between the court and defense counsel about the role of the alternates. Id. Following this discussion, the trial court instructed the jury that the alternates were to return to the jury room with the seated jurors, but were not to participate in deliberations. Id. at 624-25, 843 A.2d 64. Instead, “the alternates were to be mere observers,” so that they could step in in case one of the seated jurors was unable to continue with the second phase of the trial. Id. at 624, 843 A.2d 64. Defense counsel again objected to the presence of alternates in the jury room. Id. at 625, 843 A.2d 64.
This Court held “that the trial court erred in sending the alternate jurors into the jury room to deliberate on the guilt/innocence phase of the trial.” Id. at 629, 843 A.2d 64; see also id. at 630, 843 A.2d 64 (“Once the additional jurors entered the jury room with the jurors to consider the verdict, and the deliberations commenced, the error could not be cured”). The Court noted that in Maryland, unlike in some other states, an alternate juror cannot be substituted for a seated juror “after deliberations have commenced.” Id at 630, 843 A.2d 64. Therefore, “[t]he deliberations of the regular jurors are of no concern to the alternates.” Id. The Court further indicated that the presence of alternate jurors during deliberations, whether they participate or not, constitutes error. See id. at 630-31, 843 A.2d 64 (“There can be no doubt that, despite his good intentions and attempt to cure the error, the judge erred by allowing the alternates to attend any part of the jury deliberations. The trial court clearly erred.” (emphasis added) (footnote omitted)); id. at 629 n.4, 843 A.2d 64 (“The presence of alternate jurors in the jury room during deliberations is generally regarded as error.” (emphasis added)); id. at 640, 843 A.2d 64 (“We hold that at any time an alternate is in the jury room during deliberations he participates by his presence and, whether he says little or nothing, his presence will void the trial.” (quoting State v. Bindyke, 288 N.C. 608, 220 S.E.2d 521, 533 (1975)).
Thus, at the time of Mr. Newton’s trial in 2006, clearly established Maryland law provided that an alternate juror cannot be substituted for a seated juror after deliberations *370 have commenced, and that the presence of an alternate juror during deliberations constitutes error. Despite this clearly established law, Mr. Newton’s trial counsel, the prosecutor, and the trial judge—all apparently ignorant of the law— agreed to allow an alternate to be present in the jury room during deliberations at Mr. Newton’s second trial. The reason for this arrangement was that Mr. Newton’s first trial had ended in a mistrial due to juror absences, and everyone wanted to avoid this result in the second trial. The trial judge wanted the alternate to be present during deliberations so that she “could become the 12th juror” if one of the seated jurors was unable to continue after deliberations had commenced. As explained above, however, Maryland law prohibits the substitution of an alternate juror “after deliberations have commenced.” Id, at 630, 843 A.2d 64; Hayes, 355 Md. at 635, 735 A.2d 1109.
As the Court of Special Appeals recognized in its opinion below, “[pjursuant to Stokes, there is no question that it is error to send an alternate juror into the jury room during deliberations, even with instructions not to participate in deliberations.” State v. Newton, 230 Md.App. 241, 265, 146 A.3d 1204 (2016). However, the intermediate appellate court then concluded that agreeing to this procedure did not constitute deficient performance on the part of Mr. Newton’s trial counsel because it was “a tactical decision that he reasonably believed would be beneficial to his client.” Id. at 271, 146 A.3d 1204. Respectfully, I disagree with this conclusion.
To determine whether trial counsel’s performance was constitutionally deficient under Strickland, “[w]e look to whether counsel’s ‘representation fell below an objective standard of reasonableness.’ ” Smith, 223 Md.App. at 26, 115 A.3d 210 (emphasis added) (quoting Harris, 303 Md. at 687, 496 A.2d 1074). Although the Court of Special Appeals quoted this proposition in its Standard of Review section, see Newton, 230 Md.App. at 250, 146 A.3d 1204, I believe the intermediate appellate court actually applied a subjective standard of reasonableness to Mr. Newton’s trial counsel’s performance. Regardless of whether trial counsel may have “reasonably be *371 lieved” that his strategy of allowing an alternate in the jury room during deliberations would be beneficial to his client, it was not, in fact, reasonable for trial counsel to so believe.
Under clearly established Maryland law at the time of Mr. Newton’s trial, there was no possible scenario under which allowing the alternate to be present during jury deliberations could have benefitted Mr. Newton, because substituting the alternate after deliberations had commenced was, and still is, prohibited. Thus, I simply cannot agree with the intermediate appellate court that this “was a strategy that could have worked to the benefit of [Mr. Newton],” when it is admittedly “one not sanctioned by law.” Id. at 270, 146 A.3d 1204. Instead, trial counsel’s consent to the alternate’s presence during jury deliberations was the result of his ignorance of the law, which he admitted at Mr. Newton’s postconviction hearing. See Coleman v. State, 434 Md. 320, 338, 75 A.3d 916 (2013) (“We do not see how trial counsel’s failure to object because of his ignorance of the law could possibly be seen as sound trial strategy or a strategic choice.”). Therefore, I would hold that trial counsel’s “representation fell below an objective standard of reasonableness,” Harris, 303 Md. at 697, 496 A.2d 1074, and thus Mr. Newton has established the deficient performance prong of his ineffective assistance of counsel claim.
Turning to prejudice, I agree with the Majority that Mr. Newton must demonstrate that trial counsel’s deficient performance prejudiced his defense by establishing either (1) that but for the deficient performance, there is a substantial possibility that the result of the proceeding would have been different, or (2) that the deficient performance rendered the proceeding fundamentally unfair or unreliable. See Majority Op. at 357, 168 A.3d at 10; Coleman, 434 Md. at 340-41, 75 A.3d 916. In other words, I agree that this case does not fall into any of the scenarios described in United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), where the prejudice prong of an ineffective assistance of counsel claim is presumed.
*372 However, I disagree with the Majority’s conclusion that Mr. Newton did not establish that his trial counsel’s deficient performance rendered the proceeding fundamentally unfair. In assessing fundamental fairness, the Majority draws a distinction between two cases in which alternates were present in the jury room during deliberations: Olano and Stokes. See Majority Op. at 357-61, 168 A.3d at 10-12. Both cases were direct appeals, not postconviction ineffective assistance of counsel claims.
In Olano, “the defendants’ attorneys agreed to let alternates sit in on deliberations, and the trial court instructed them not to participate.” Majority Op. at 360, 168 A.3d at 12 (emphasis added) (citing United States v. Olano, 507 U.S. 725, 728-29, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). When the defendants challenged this arrangement on direct appeal, the Supreme Court engaged in a plain error analysis under Federal Rule of Criminal Procedure 52(b). Olano, 507 U.S. at 737, 113 S.Ct. 1770. Under Rule 52(b), a defendant must show that the error “affected substantial rights” in order to qualify for plain error review. Id.
The Supreme Court assumed “arguendo that certain errors affect substantial rights independent of prejudice,” but held that “the instant violation ... is not such an error.” Id. (internal quotation marks and brackets omitted). The Court also declined to “presume prejudice for purposes of the Rule 52(b) analysis here.” Id. at 740, 113 S.Ct. 1770. The Court then emphasized,
Whether the Government could have met its burden of showing the absence of prejudice, under Rule 52(a) [ (harmless error review) ], if respondents had not forfeited their claim of error, is not at issue here. This is a plain-error case, and it is respondents who must persuade the appellate court that the deviation from Rule 24(c)[2] was prejudicial.
Id. at 741, 113 S.Ct. 1770.
In Stokes, the trial court sent alternate jurors into the jury room during deliberations over defense counsel’s objection. *373 Stokes, 379 Md. at 623, 843 A.2d 64. When the defendant challenged this procedure on direct appeal, this Court held that “[p]rejudice must be presumed..where alternates breach the sanctity of the jury room.” Id. at 638, 843 A.2d 64. The Stokes Court distinguished Olano by stating that “the plain error rule applies when alternate jurors join regular jurors in the jury room when jury deliberations begin, without objection. The instant case is not a plain error case; appellant objected to the additional jurors and the issue was preserved for appellate review.” Id. at 632 n.8, 843 A.2d 64.
Thus, when an alternate is allowed in the jury room during deliberations over defense objection, prejudiced is presumed under Stokes. But, when an alternate is allowed in the jury room during deliberations without objection, or with defense counsel’s consent, the defendant must demonstrate actual prejudice under a plain error analysis pursuant to Olano. Applying this distinction to Mr. Newton’s case, because his trial counsel consented—rather than objected—to the alternate’s presence in the jury room during deliberations, his appellate counsel would have been required to establish actual prejudice under plain error review if she had raised the error on direct appeal. After apparently recognizing this distinction, the Majority holds that “the presence of an alternate juror in deliberations does not clear the high bar of fundamental unfairness—at least not in this ease.” Majority Op. at 361, 168 A.3d at 12.
But this is not a plain error case, as in Olano. This is an ineffective assistance of counsel case. Thus, Mr. Newton should not be required to establish that the alternate’s presence in the jury room was sufficient to “chill” the deliberations. See Majority Op. at 360, 168 A.3d at 12. Instead, this *374 Court must determine whether Mr. Newton’s trial counsel’s deficient performance prejudiced his defense. In other words, the Court should not be considering whether the alternate’s presence in the jury room during deliberations prejudiced Mr. Newton, which was the issue in Stokes and Olano. The Court should be considering whether trial counsel’s consenting to the alternate’s presence in the jury room during deliberations prejudiced Mr. Newton.
Indeed, it is precisely because Mr. Newton would have been required, on direct appeal, to meet the higher threshold of actual prejudice under Olano, rather than presumed prejudice under Stokes, that I would hold that trial counsel’s deficient performance prejudiced Mr. Newton. Because trial counsel failed to object (and even affirmatively consented) to the presence of an alternate during jury deliberations, appellate counsel was handed a much weaker argument to pursue on direct appeal. Rather than simply showing that an alternate was present during deliberations and therefore prejudice must be presumed under Stokes, appellate counsel would have been required to raise the error in the context of plain error review, and would have been required to establish actual prejudice under Olano.[3]
In my view, because trial counsel’s deficient performance deprived Mr. Newton of a near-certain reversal on direct appeal, such deficient performance rendered Mr. Newton’s proceeding fundamentally unfair. Therefore, I would hold that Mr. Newton has established the prejudice prong of his ineffective assistance of counsel claim. Having established both deficient performance and prejudice under Strickland with respect to trial counsel, I would hold that Mr. Newton is entitled *375 to postconviction relief. Accordingly, I would reinstate the judgment of the postconviction court granting Mr. Newton a new trial.

. I agree with the Majority that Mr. Newton has waived the ability to challenge the trial court’s error directly under the Uniform Postconviction Procedure Act. See Majority Op. at 352 n.5, 168 A.3d at 7 n.5.

. Unlike the Maryland Rule, Federal Rule of Criminal Procedure 24(c)(3) permits the trial judge to "retain alternate jurors after the jury *373 retires to deliberate.” But, the judge "must ensure that a retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discharged. If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew.” This Court may wish to consider the adoption of a similar provision in the Maryland Rules that would permit the retention of alternate jurors during deliberations in order to provide greater flexibility to trial judges.

. Because appellate counsel would have been faced with such a stringent standard to satisfy on direct appeal, I agree with the Majority that Mr. Newton was not prejudiced by appellate counsel's failure to raise this argument on direct appeal. See Majority Op, at 365-66, 168 A.3d at 15. Indeed, I agree with the Majority that, because appellate counsel would have been forced to raise the issue in the context of plain error review, "a Maryland appellate court reviewing [Mr.] Newton’s case .,. would likely not find the presence of the alternate to be plain error.” Id.