*Donta Newton v. State of Maryland*, No. 86, September Term, 2016, Opinion by Adkins, J.

**SIXTH AMENDMENT TO THE U.S. CONSTITUTION — ARTICLE 21 OF THE MARYLAND DECLARATION OF RIGHTS — INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL:** Petitioner claimed that his trial attorney's failure to object to the presence of an alternate juror during jury deliberations constituted ineffective assistance of counsel. Petitioner failed to show that he was prejudiced by his trial attorney's performance as required by *Strickland v. Washington*, 466 U.S. 668 (1984), because the trial court instructed the alternate not to participate in deliberations. Accordingly, Petitioner failed to establish that his trial counsel was ineffective.

**SIXTH AMENDMENT TO THE U.S. CONSTITUTION — ARTICLE 21 OF THE MARYLAND DECLARATION OF RIGHTS — INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL:** Petitioner claimed that his appellate counsel was ineffective in failing to argue that the presence of an alternate juror during deliberations constituted plain error. Petitioner failed to show that he was prejudiced by his appellate attorney's performance as required by *Strickland v. Washington*, 466 U.S. 668 (1984). Although the attorney's performance may have been deficient in failing to argue that the presence of the alternate juror during deliberations was plain error, Petitioner was not prejudiced by the omission because he would not have prevailed on his appeal if his attorney had raised the issue. Accordingly, Petitioner failed to establish that his appellate counsel was ineffective.

Circuit Court for Baltimore City
Case No.: 104310025
Argued: May 9, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 86

September Term, 2016

DONTA NEWTON

v.

STATE OF MARYLAND

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

Opinion by Adkins, J.
Getty, J., dissents.

Filed: August 23, 2017

In postconviction cases, we must often navigate the fine line between a defendant's right to a fair trial on the one hand and the legal system's interest in finality on the other. Today we are faced with the question of whether a postconviction petitioner's trial counsel was constitutionally ineffective in consenting to the presence of an alternate juror during deliberations. We also address whether his appellate counsel was ineffective in failing to argue that the alternate juror's presence was plain error.

## FACTS AND LEGAL PROCEEDINGS

On the evening of September 20, 2004, Jerrell Patillo went to "hang out" with old friends in Baltimore City, including Petitioner Donta Newton. While Newton and Patillo were talking, Newton, for no apparent reason, began shooting at Patillo. A bullet struck Patillo in the back, and he fell to the ground. Newton attempted to shoot him again, but his gun jammed, and Patillo fled down the street. After Newton cleared his gun, he ran after Patillo, shooting at him. A second bullet struck Patillo in his left buttock. He survived his injuries.

Newton was charged with attempted first-degree murder and various handgun-related offenses in the Circuit Court for Baltimore City. His case was tried twice. On February 7, 2006, the first trial was declared a mistrial due to juror absences and scheduling conflicts. The court empaneled another jury and the second trial began that same day. During the second trial, the court excused one juror due to illness, and an alternate was seated in his place. Another juror requested to be excused because he had a doctor's appointment the next day. The court declined his request.

At the close of the trial, the court called State and defense counsel to the bench, and the following exchange ensued:

> THE COURT: I have never done this before, but I might suggest that, generally, I excuse the alternate juror, but I need your answer anyway. I am open to any request that you want to keep the alternate in the courtroom or let the alternate go to the Jury Room with instructions not to participate, in light of my past experience in the case.
>
> [PROSECUTOR:] Your Honor, I would not object to the second one with instructions not to participate unless we excuse a juror. I agree.
>
> THE COURT: Send all of them to the jury room?
>
> [PROSECUTOR:] Yes.
>
> [DEFENSE COUNSEL:] Yes.
>
> THE COURT: With the instruction not to participate?
>
> [PROSECUTOR:] Uh-huh.
>
> [DEFENSE COUNSEL:] Yes.
>
> THE COURT: All right.
>
> [DEFENSE COUNSEL:] Fine. I'm just thinking maybe you could expand on that a little bit and tell them why—
>
> THE COURT: Alternates are not to participate in the discussion.
>
> [DEFENSE COUNSEL:] Fine.
>
> [PROSECUTOR:] That's fine, Your Honor.

Before sending the jury to deliberate, the court instructed the jury and alternate:

> Now, I'm going to ask that the alternate juror go to the jury room, stay with the jury until they reach a decision. However,

2

you are the alternate juror, therefore, you are not to participate in any of the discussion. Sit and listen carefully and the reason for that is, heaven forbid something should happen that causes one of the [12] jurors not to be able to return or continue, you could become the [twelfth] juror. Please, the 12 jurors, understand that the alternate is not to be involved in the discussion, so don't let her. I think everybody will understand to participate in that, perhaps, she needs to be there to hear everything going on, so that in the unlikely event she is needed as a juror she can step right in without missing a beat, so to speak.

The jury deliberated for approximately two hours and twenty minutes. Before the jury returned, the following exchange occurred at the bench:

[PROSECUTOR:] Your Honor, any verdict of guilty, I don't know what is appropriate to make sure Juror No. 13, alternate, did not speak or did not participate. I want to put on the record just to make sure. I don't know if that is appropriate or not.

[DEFENSE COUNSEL:] I don't see the need for it. You instructed. You don't have an indication to the contrary.

THE COURT: I agree.

The jury found Newton guilty on all counts. He was sentenced to life imprisonment for attempted first-degree murder and two consecutive five-year sentences for the handgun-related charges. Newton appealed his convictions.

On appeal, Newton argued that the trial court failed to properly instruct the jury regarding reasonable doubt, attempted first-degree murder, and the handgun-related offenses. He also contended that he was not properly advised of his right to testify. Newton did not argue that the presence of the alternate juror during deliberations was plain error. The Court of Special Appeals rejected Newton's arguments and affirmed his convictions

3

in an unreported opinion. *Newton v. State*, No. 2827, slip op. at 5, 7 (Md. Ct. Spec. App. Feb. 22, 2008).

In March 2012, Newton filed a petition for postconviction relief in the Circuit Court for Baltimore City pursuant to the Uniform Postconviction Procedure Act ("UPPA"), Maryland Code (1957, 2008 Repl. Vol.), §§ 7-101 through 7-109 of the Criminal Procedure Article ("CP"). He raised several grounds for relief, including violations of his right to effective assistance of counsel under the Sixth Amendment of the U.S. Constitution and Article 21 of the Maryland Declaration of Rights.[1] Specifically, Newton alleged that: (1) his trial attorney was ineffective because he failed to object to an alternate juror being present in the jury room during deliberations in violation of Maryland Rule 4-312(g)(3);[2]

---

[1] Article 21 of the Maryland Declaration of Rights provides:

> That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence; **to be allowed counsel**; to be confronted with the witnesses against him; to have process for his witnesses; to examine the witnesses for and against him on oath; and to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty.

(Emphasis added.)

[2] Maryland Rule 4-312(g)(3) provides:

> Discharge of Jury Member. At any time before the jury retires to consider its verdict, the trial judge may replace any jury member whom the trial judge finds to be unable or disqualified to perform jury service with an alternate in the order of selection set under section (e). When the jury retires to

4

(2) his appellate counsel was ineffective in failing to argue that the alternate juror's presence during deliberations was plain error; and (3) the trial court erred in permitting the alternate to sit in on deliberations. In February 2013, the postconviction court found in favor of Newton, agreeing with him on all three issues.[3] Accordingly, the court granted Newton a new trial. The State appealed.

The Court of Special Appeals reversed. The intermediate appellate court held that Newton's attorney made a valid strategic decision when he agreed to let the alternate sit in on deliberations, and therefore was not ineffective. *State v. Newton*, 230 Md. App. 241, 270–71 (2016). The court further held that Newton's appellate counsel's performance was not deficient because it was unlikely that the presence of the alternate would be deemed plain error, especially given that trial counsel had agreed to the arrangement. *Id.* at 272–73. The court did not address whether the trial court erred in instructing the alternate to sit in on deliberations. *Id.* at 245 n.2.

---

consider its verdict, the trial judge **shall** discharge any remaining alternates who did not replace another jury member.

(Emphasis added.)

[3] The postconviction court also found that Newton's trial attorney rendered ineffective assistance of counsel because he failed to object to statements regarding witness intimidation in the State's closing arguments. The Court of Special Appeals reversed on this issue. *State v. Newton*, 230 Md. App. 241, 257 (2016). Newton raised this issue in his Petition for Writ of Certiorari, but we declined to grant *certiorari* as to this question.

We granted Newton's Petition for Certiorari to consider the following questions:[4]

1. Did the postconviction court correctly conclude that Newton's trial counsel was ineffective in consenting to the presence of an alternate juror during deliberations?

2. Did the postconviction court correctly conclude that Newton's appellate counsel was ineffective in failing to raise the issue of an alternate juror's presence during deliberations?

Because we answer these questions in the negative, we shall affirm the judgment of the Court of Special Appeals.

## STANDARD OF REVIEW

The review of a postconviction court's findings regarding ineffective assistance of counsel is a mixed question of law and fact. *Harris v. State*, 303 Md. 685, 698 (1985). Because we are not finders of fact, we defer to the factual findings of the postconviction court unless clearly erroneous. *Id.* at 698. But we review the court's legal conclusion regarding whether the defendant's Sixth Amendment rights were violated without

---

[4] We have rephrased and divided Newton's first question presented into two separate questions. Newton presented two questions for our review, and we granted *certiorari* on the first:

1. Whether the Court of Special Appeals erred in reversing the Circuit Court's determination that trial counsel, appellate counsel and the trial court committed reversible error in permitting alternate jurors to be present during jury deliberations?

2. Whether the Court of Special Appeals erred in reversing the Circuit Court's determination that trial counsel rendered ineffective assistance of counsel in failing to object to the State's rebuttal closing argument?

6

deference. *Id.* at 697 (citations omitted). We "re-weigh" the facts in light of the law to determine whether a constitutional violation has occurred. *Id.* at 698 (citations omitted).

## DISCUSSION

Newton urges us to affirm the judgment of the postconviction court granting him a new trial. He argues that his trial counsel was deficient because he failed to object to an alternate juror being present during jury deliberations. He also asserts that his appellate counsel was ineffective because she did not raise the alternate juror issue on appeal.[5] The State, on the other hand, maintains that neither Newton's trial counsel nor his appellate counsel were ineffective because they both made valid tactical decisions.

### Ineffective Assistance of Trial Counsel

Newton argues that his trial counsel was deficient because he was ignorant of *Stokes v. State*, 379 Md. 618 (2004), in which this Court held that it was reversible error for the court to send an alternate juror into deliberations over defense counsel's objection. *Id.* at 629, 642. Without knowledge of this case, Newton claims, his trial counsel could not have made a valid tactical decision when he acquiesced to the alternate's presence. Newton further argues that the alternate's presence during deliberations was structural error, and,

_____

[5] Additionally, Newton seeks to challenge the presence of the alternate juror more directly, without clearing the hurdles necessary for proving an ineffective counsel claim. Such a challenge is not viable. Under the Uniform Postconviction Procedure Act ("UPPA"), if a petitioner fails to allege error when he should have done so, such as at trial or on direct appeal, he waives the ability to raise the error in postconviction proceedings, absent special circumstances. Md. Code (1957, 2008 Repl. Vol.), § 7-106(b)(1) of the Criminal Procedure Article ("CP"). Because Newton's trial attorney agreed to permit the alternate juror to be present during deliberations and Newton has not alleged special circumstances, he has waived the ability to raise the issue as trial court error in postconviction proceedings.

7

therefore, prejudice is presumed under the *Strickland v. Washington*, 466 U.S. 668 (1984), ineffective-assistance-of-counsel test. Alternatively, if prejudice is not presumed, Newton contends, he was prejudiced because had his trial counsel objected to the presence of the alternate, he would have been granted a new trial on appeal.

This case requires us to analyze how structural error interacts with a postconviction ineffective-assistance-of-counsel claim. We begin with a discussion of these two doctrines.

*Structural Error*

In general, when an appellate court finds that the trial court erred—even in violation of a defendant's constitutional rights—it employs harmless error review to determine whether reversal is warranted. *Chapman v. California*, 386 U.S. 18, 22 (1967); *Arizona v. Fulminante*, 499 U.S. 279, 306–07 (1991) (collecting cases). Under harmless error review, reversal is warranted unless "a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict." *Simpson v. State*, 442 Md. 446, 457 (2015) (citation omitted).

But the U.S. Supreme Court has acknowledged that certain constitutional rights are "so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman*, 386 U.S. at 23. These errors are known as structural errors because they "affect[ ] the framework within which the trial proceeds" and are not "simply an error in the trial process itself." *Fulminante*, 499 U.S. at 310. If a structural error is objected to at trial and raised on direct appeal, "the defendant [ ] is entitled to automatic reversal regardless of the error's actual effect on the outcome." *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1910 (2017) (citation and internal quotation marks omitted). Even when an

8

error is deemed "structural," however, a defendant must preserve the issue for appellate review to be entitled to an automatic reversal. *Savoy v. State*, 420 Md. 232, 243 n.4 (2011).

In *Weaver*, Justice Kennedy, writing for the majority, explained that there are three broad categories of structural error. The first category includes errors in which "the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest," such as when a defendant is denied the ability to conduct his own defense. *Weaver*, 137 S. Ct. at 1908 (citing *McKaskle v. Wiggins*, 465 U.S. 168, 177–78 n.8 (1984)). These errors are deemed structural because their impact on the outcome of the trial is irrelevant to the right violated. *Id.* The second category includes errors for which the effects "are simply too hard to measure," such as a denial of the defendant's counsel of choice. *Id.* (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 149 n.4). These errors are structural because it would be "almost impossible" for the State to show that they were harmless beyond a reasonable doubt. *Id.* Lastly, the third category encompasses errors that "always result[ ] in fundamental unfairness." *Id.* These errors include denying an indigent criminal defendant counsel and failing to give a reasonable-doubt jury instruction. *Id.* (citing *Gideon v. Wainwright*, 372 U.S. 335, 343–44 (1963); *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)). Because these errors always result in a fundamentally unfair trial, it would be pointless for the State to attempt to show that such an error was harmless. *Id.*

This Court has found structural error in two cases. In *Savoy*, the Court concluded that an error in a reasonable doubt jury instruction was structural, but it did not automatically reverse because the defendant's attorney had not objected to the instruction.

9

420 Md. at 254. Instead, because the error was unpreserved, we conducted plain error review and held that it warranted reversal. *Id.* at 255–56. In *Harris v. State*, 406 Md. 115 (2008), we held, based on the Maryland Constitution, that an unsworn jury was a structural error that required automatic reversal. *Id.* at 130–32.

*Ineffective Assistance of Counsel*

The Sixth Amendment to the U.S. Constitution grants criminal defendants a right to effective assistance of counsel. *Strickland*, 466 U.S. at 685. Under *Strickland*, to establish ineffective assistance of counsel, a defendant must show that: (1) his attorney's performance was deficient; and (2) he was prejudiced as a result. *Id.* at 687.

As to the first prong, the defendant must show that his "counsel's representation fell below an objective standard of reasonableness, and that such action was not pursued as a form of trial strategy." *Coleman v. State*, 434 Md. 320, 331 (2013) (quoting *Strickland*, 466 U.S. at 687–89) (internal quotation marks omitted). We have explained that "[p]revailing professional norms define what constitutes reasonably effective assistance, and all of the circumstances surrounding counsel's performance must be considered." *Mosley v. State,* 378 Md. 548, 557 (2003) (citation and internal quotation marks omitted). Accordingly, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

To establish the second prong—prejudice—the defendant must show either: (1) "a reasonable probability that, but for counsel's unprofessional errors, the result of the

10

proceeding would have been different"; or (2) that "the result of the proceeding was fundamentally unfair or unreliable." *Coleman*, 434 Md. at 340–41 (citations omitted). The *Strickland* Court explained, "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* also instructs that courts need not consider the performance prong and the prejudice prong in order, nor do they need to address both prongs in every case. *Id.* at 697; *Oken v. State*, 343 Md. 256, 284 (1996). As the *Strickland* Court explained, "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

*Structural Error and* Strickland*'s Prejudice Prong*

In *Weaver*, the petitioner argued that the presumption of prejudice due to a structural error—a violation of her public-trial right—satisfied *Strickland*'s prejudice prong. The Supreme Court rejected this argument and held that the petitioner must still show *Strickland* prejudice. *Weaver*, 137 S. Ct. at 1911. The Court explained that "the reasons an error is deemed structural may influence the proper standard used to evaluate an ineffective-assistance claim premised on the failure to object to that error." *Id.* at 1907. It assumed, without reaching the issue, that the prejudice prong could be satisfied if the attorney's errors were "so serious as to render [the] trial fundamentally unfair"—the third category of structural error. *Id.* at 1911.

The *Weaver* Court explained that even though a public-trial right violation requires automatic reversal on direct appeal, it is still analyzed under the *Strickland* framework

11

when raised as part of an ineffective-assistance-of-counsel claim. Citing finality interests, the Court noted that if a new trial is granted on direct appeal, "there may be a reasonable chance that not too much time will have elapsed for witness memories still to be accurate and physical evidence not to be lost." *Id.* at 1912. In addition, reviewing courts are in a better position to instruct trial courts on facts and legal principles to consider on remand. *Id.* Postconviction courts, by contrast, assess ineffective-assistance-of-counsel claims through the *Strickland* lens and do not address the merits of particular trial court errors. The *Weaver* Court reasoned that these differences justify imposing a higher standard for granting a new trial when a defendant raises a structural error on postconviction, rather than on direct appeal. *Id.*; *see also Strickland*, 466 U.S. at 693–94 ("The [*Strickland*] standard [ ] reflects the profound importance of finality in criminal proceedings.").

Applying *Weaver*, we conclude that to succeed on his ineffective-assistance-of-counsel claim, Newton must establish *Strickland*'s deficient performance and prejudice prongs. We begin with prejudice.

### *Prejudice*

Newton can establish prejudice two ways. He can either show that: (1) but for his attorney acquiescing to the alternate's presence during deliberations, the outcome of his trial would have been different; or (2) that the alternate's presence in the jury room rendered his trial fundamentally unfair. Newton argues that we should presume prejudice when alternate jurors sit in on deliberations. Even if we do not presume prejudice, Newton claims that he suffered actual prejudice because had his attorney objected to the alternate juror's presence during deliberations, he would have been granted a new trial on appeal.

12

Assuming for the purposes of our analysis that the presence of the alternate juror constitutes structural error, we look to whether the error led to fundamental unfairness in this case. As the *Weaver* Court explained, "An error can count as structural even if the error does not lead to fundamental unfairness in every case." 137 S. Ct. at 1908; *see also Gonzalez-Lopez*, 548 U.S. at 149 n.4 (rejecting the idea that structural errors must "*always* or *necessarily* render a trial fundamentally unfair and unreliable" (emphasis in original)). If the error is structural because it is fundamentally unfair, then it will satisfy the prejudice prong of *Strickland*. *See Coleman*, 434 Md. at 341. In support of his prejudice argument, Newton relies heavily on *Stokes v. State*.

In *Stokes*, we held that a trial court erred in sending four alternate jurors into the jury room with express instructions to participate in deliberations. 379 Md. at 629. *Stokes* was a direct appeal in which the defendant's attorney had objected to the inclusion of the alternates in deliberations. *Id.* at 625. We adopted a test which presumes that a criminal defendant is prejudiced by the presence of alternate jurors during deliberations—a standard similar to structural error. *Id.* at 638. In adopting this rule, we explained that the secrecy and privacy of jury deliberations is "the means of ensuring the integrity of the jury trial itself." *Id.* We continued, "The presence of alternate jurors who have no legal standing as jurors injects an improper outside influence on jury deliberations and impairs the integrity of the jury trial." *Id.* Certainly, we have taken a stance on the importance of keeping the deliberation process pure—even the presence in the room of someone whose opinion will not count in reaching the verdict is verboten. But our holding in *Stokes* reads as follows:

13

We hold that the trial court erred in sending the alternate jurors into the jury room to deliberate on the guilt/innocence phase of the trial. A criminal defendant's constitutional right to a jury trial under the Maryland Constitution means a trial by [12] people, unless the defendant stipulates in writing, or on the record, to a jury of less than [12] people.

*Id.* at 629 (footnote omitted). In a footnote following the passage above, we explicitly reserved judgment on the question close to that presented here, saying: "We express no opinion as to whether a defendant may stipulate to more than [12] persons on the jury. In the case *sub judice*, the record is clear that appellant objected to more than the twelve jurors deliberating on the case." *Id.* at 629–30 n.5.

Newton contends that presumed prejudice prevails, despite consent by defense counsel, because we signaled that treatment in *Stokes* by quoting with approval the following passage from a North Carolina Supreme Court case:

[T]he presence of an alternate, either during the entire period of deliberation preceding the verdict, *or* his presence at any time during the *deliberations* of the [12] regular jurors, is a fundamental irregularity of constitutional proportions which requires a mistrial or vitiates the verdict, if rendered. **And this is the result notwithstanding [the fact that] the defendant's counsel consented, or failed to object, to the presence of the alternate.**

*Id.* at 639 (quoting *State v. Bindyke*, 220 S.E.2d 521, 531 (N.C. 1975)) (emphasis added). But in a footnote placed immediately following the bolded text above, we qualified our approval as follows:

Since the Supreme Court decision in *United States v. Olano*, 507 U.S. 725 (1993), some jurisdictions have modified this view on the issue, particularly when there was no objection below and the threshold issue on appeal is whether the issue is preserved for appellate review, and then the matter is

14

> considered under the plain error doctrine. The issue of preservation for appellate review or waiver is not an issue in the case *sub judice* because appellant objected to the presence of alternate jurors in the jury room.

*Id.* at 639 n.10. Furthermore, *Stokes* was a direct appeal, and errors that would result in automatic reversal on direct appeal may not warrant a new trial when raised as part of a postconviction ineffective-assistance-of-counsel claim. *See Weaver*, 137 S. Ct. at 1911–12.

In Newton's case, his attorney consented to the alternate juror's presence during deliberations, provided that she was instructed not to participate. Unlike *Stokes*, before the jury began deliberations, the court expressly instructed the alternate: "[Y]ou are the alternate juror, therefore, you are **not to participate** in any of the discussion. Sit and listen carefully . . . ." (Emphasis added.) The trial court further instructed the jurors not to let the alternate participate in deliberations. It explained, "[U]nderstand that the alternate is not to be involved in the discussion, so don't let her." The court also gave the jury the reasoning behind its instructions: "I think everybody will understand . . . that, perhaps, she needs to be there to hear everything going on, so that in the unlikely event she is needed as a juror she can step right in without missing a beat, so to speak."

*United States v. Olano*, 507 U.S. 725 (1993), although a direct appeal, is quite instructive. There, the defendants' attorneys agreed to let alternates sit in on deliberations, and the trial court instructed them not to participate. *Id.* at 728–29. On appeal, the Supreme Court declined to presume prejudice and held that the unobjected-to presence of alternate jurors during deliberations did not warrant reversal. *Id.* at 740–41. The *Olano* Court explained that the presence of alternate jurors during deliberations might prejudice the

15

defendants because: (1) "the alternates actually participated in the deliberations, verbally or through 'body language'"; or (2) "the alternates' presence exerted a 'chilling' effect on the regular jurors." *Id.* at 739. The Court emphasized, however, that if the alternate followed the court's instructions to not participate and if the alternate's presence did not restrain the other jurors' "freedom of expression and action," there was "little substantive difference between the presence of the alternate and the presence in the [jury room] of an unexamined book which had not been admitted into evidence." *Id.* (citation and alteration omitted). The Court reasoned that "the mere presence of alternate jurors [did not] entail[ ] a sufficient risk of "chill" to justify a presumption of prejudice." *Id.* at 741.

Here, the trial court instructed both the alternate and the actual jurors that the alternate was not to participate in deliberations. Like *Olano*, we will presume that the jury followed the court's instructions that the alternate not participate in deliberations. *Carter v. State*, 366 Md. 574, 592 (2001) ("[J]urors are presumed to follow the court's instructions."). Furthermore, we do not consider an alternate's presence sufficient to "chill" deliberations, especially given that she was instructed not to participate.

Although jury secrecy is important to ensuring that a criminal defendant has a fair trial, the presence of an alternate juror in deliberations does not clear the high bar of fundamental unfairness—at least not in this case. The Supreme Court has found only a handful of circumstances that render a trial fundamentally unfair, including: the complete deprivation of counsel, *Gideon*, 372 U.S. at 343–44; the failure to give a reasonable doubt jury instruction, *Sullivan*, 508 U.S. at 279; a biased judge, *Tumey v. Ohio*, 273 U.S. 510, 535 (1927); and the race-based exclusion of grand jurors, *Vasquez v. Hillery*, 474 U.S. 254,

16

261–64 (1986); *see Weaver*, 137 S. Ct. at 1908, 1911 (listing these errors as fundamentally unfair structural errors). It is unfathomable that the mere presence of an alternate during jury deliberations—with the express consent of defense counsel and strict instructions to the juror to listen only—gives rise to nearly as grave constitutional concerns as the circumstances presented in the four cases above considered by the Supreme Court to be "fundamentally unfair." And Newton has pointed to no other structural error cases that would justify our finding fundamental unfairness here.

<u>Actual Prejudice</u>

Newton argues that he was prejudiced because if his trial counsel had objected to the presence of the alternate, he would have been granted a new trial on appeal. This argument assumes, however, that the trial court would have permitted the juror to sit in on deliberations over counsel's objection. When we examine prejudice for an ineffective-assistance-of-counsel claim, we "presume . . . that the judge . . . acted according to law." *Strickland*, 466 U.S. at 694. We therefore must assume that if Newton's attorney had objected, the judge would have sustained Newton's objection and excused the alternate as required by Maryland Rule 4-312(g)(3).

A proper *Strickland* analysis also disposes of Newton's ineffective-assistance-of-counsel claim under the Maryland Constitution. We have repeatedly stated that "[t]here is no distinction between the right to counsel guaranteed by the Sixth Amendment of the U.S. Constitution and Article 21 of the Maryland Declaration of Rights." *See, e.g.*, *State v. Colvin*, 314 Md. 1, 24 (1988) (alterations omitted) (quoting *Lodowski v. State*, 307 Md. 233, 247 (1986)); *Clark v. State*, 306 Md. 483, 487 (1986) (citation omitted); *State v.*

17

*Tichnell*, 306 Md. 428, 440 (1986) (citation omitted). In *Colvin*, we flatly rejected a request to depart from *Strickland* and establish an ineffective-assistance of counsel test under the Maryland Constitution. 314 Md. at 23–24. Instead, we held that the *Strickland* standard applies to ineffective-assistance-of-counsel claims under the Maryland Constitution and considered the matter "settled." *Id.*

We have also recognized a due process right to counsel under the Fourteenth Amendment's Due Process Clause and Article 24 of the Maryland Declaration of Rights. *Rutherford v. Rutherford*, 296 Md. 347, 348 (1983). In interpreting the due process guarantees of Article 24, we have only departed from the Fourteenth Amendment standard "when fundamental fairness demanded that we do so." *Washington v. State*, 450 Md. 319, 341 (2016) (citation and internal quotation marks omitted) (collecting cases). As discussed *supra*, Newton's case does not rise to the level of fundamental unfairness. Thus, we see no reason to depart from the federal constitutional standard in this case.

## Ineffective Assistance of Appellate Counsel

Newton contends that his appellate counsel's performance was deficient because she failed to argue that the alternate juror's presence during deliberations was plain error. He claims that if his appellate counsel had raised the alternate juror issue, the court would have reversed under plain error review.

*Strickland*'s two-pronged test applies to claims of ineffective assistance of **appellate** counsel, *Gross v. State*, 371 Md. 334, 349 (2002) (collecting cases), but the analytical lens through which a court views each prong varies slightly. As to the performance prong, "[t]he Sixth Amendment does not require an attorney to argue every

18

possible issue on appeal." *Id.* at 350. As the Supreme Court has explained, "[a] brief that raises every colorable issue runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions." *Jones v. Barnes*, 463 U.S. 745, 753 (1983) (citation omitted). Therefore, appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citing *Jones*, 463 U.S. 745).

To satisfy the prejudice prong, the defendant must establish to a reasonable probability that but for his counsel's failure to raise an issue, he would have prevailed on his appeal. *Id.* at 286. We have explained that in the context of counsel's failure to raise an issue on appeal, "*Strickland*'s performance and prejudice prongs naturally overlap because the questions of whether counsel's performance was adequate and whether it prejudiced the petitioner both will turn on the viability of the omitted claims, *i.e.*, whether there is a reasonable possibility of success." *Gross*, 371 Md. at 350.

The record from the postconviction proceedings in this case provides little insight into whether Newton's appellate counsel made a strategic decision in failing to raise the alternate juror issue. *See Coleman*, 434 Md. at 331 (citing S*trickland*, 466 U.S. at 687–89). Newton's attorney testified—in retrospect—that she assumed that she decided not to raise the issue of the alternate juror because it was not preserved, but she had no specific recollection. There is no testimony regarding why she decided to pursue certain issues over others. Thus, we are hard-pressed to conclude that Newton's attorney's decision not to raise the alternate juror's presence during deliberations was strategic. That said, even if

19

her decision was simply negligent, and thus her performance was deficient, whether Newton was prejudiced by her performance turns on the viability of the alternate juror claim. Because the issue was not preserved at trial, Newton would only have prevailed on the claim if the court concluded that it was plain error.

Plain error review is "reserved for those errors that are compelling, extraordinary, exceptional or fundamental to assure the defendant of a fair trial." *Robinson v. State*, 410 Md. 91, 111 (2009) (citation, alteration, and internal quotation marks omitted). Before we can exercise our discretion to find plain error, four conditions must be met: (1) "there must be an error or defect—some sort of 'deviation from a legal rule'—that has not been intentionally relinquished or abandoned, *i.e.*, affirmatively waived, by the appellant"; (2) "the legal error must be clear or obvious, rather than subject to reasonable dispute"; (3) "the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it 'affected the outcome of the district court proceedings'"; and (4) the error must "seriously affect[ ] the fairness, integrity or public reputation of judicial proceedings." *State v. Rich*, 415 Md. 567, 578 (2010) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)) (alteration omitted).

It is "rare" for the Court to find plain error. *Yates v. State*, 429 Md. 112, 131 (2012) (citation omitted). Indeed, we will do so only when the error was "so material to the rights of the accused as to amount to the kind of prejudice [that] precluded an impartial trial." *Diggs v. State*, 409 Md. 260, 286 (2009) (quoting *Trimble v. State*, 300 Md. 387, 397 (1984)). We have found this to be true of serious errors in jury instructions that "undermined a core value of constitutional criminal jurisprudence." *Savoy*, 420 Md. at 255

20

(error in reasonable doubt jury instruction); *see State v. Hutchinson*, 287 Md. 198, 208 (1980) (failure to instruct the jury that they could find the defendant not guilty); *Squire v. State*, 280 Md. 132, 133, 135 (1977) (jury instruction placing the burden of proving self-defense on the defendant). We have also found plain error when a trial judge was biased and conducted himself improperly. *Diggs*, 409 Md. at 287, 294. In many cases, however, we have declined to resort to plain error review. *See, e.g.*, *Boulden v. State*, 414 Md. 284, 313 (2010) (declining to conduct plain error review of efficacy of jury trial waiver); *Rubin v. State*, 325 Md. 552, 588 (1992) (declining to find plain error when the State said in closing arguments, without any evidentiary basis, that the defendant had attempted to poison someone); *Trimble*, 300 Md. at 399 (declining to find plain error where jury instructions omitted mental retardation as a reason the defendant could be found not guilty).

We have not yet addressed whether an alternate juror's presence during deliberations is plain error, but the Supreme Court has weighed in on the issue. In *Olano*, the Court held that the unobjected-to presence of alternate jurors during deliberations was not plain error. 507 U.S. at 741. The defense attorneys agreed to the procedure, and the alternates were instructed not to participate in deliberations. *Id.* at 728–29. The Court acknowledged that the presence of the alternates was a violation of Federal Rule of Criminal Procedure 24(c), which provides that "[a]n alternate juror who does not replace a regular juror **shall** be discharged after the jury retires to consider its verdict," but nevertheless concluded that this violation did not "affect[ ] substantial rights" of the defendants. *Id.* at 737 (emphasis added).

21

As discussed earlier, in *Stokes*, we quoted favorably from a North Carolina Supreme Court decision stating that an alternate's presence during deliberations would warrant automatic reversal "notwithstanding [the fact that] the defendant's counsel consented, or failed to object, to the presence of the alternate." 379 Md. at 639 (quoting *Bindyke*, 220 S.E.2d at 531). Importantly, though, we then indicated that the presence of an alternate juror during deliberations may not constitute plain error. *Id.* at n.10. We acknowledged that since *Olano*, other jurisdictions had walked back from requiring reversal in every case involving an alternate juror, especially when the issue was not preserved for appeal. *Id.* Today, we conclude that a Maryland appellate court reviewing Newton's case, given its factual similarities with *Olano*—his attorney consented to the procedure and the alternate was instructed not to participate in deliberations—would likely not find the presence of the alternate to be plain error.

In sum, even if his attorney's performance was deficient, Newton was not prejudiced by it because we cannot say that he would have prevailed on his appeal but for her failure to raise the alternate juror issue. *See Coleman*, 434 Md. at 340. We also conclude that the *Strickland* analysis applies to and disposes of Newton's ineffective-assistance-of-appellate-counsel claim under the Maryland Constitution.

## CONCLUSION

Newton failed to show that his trial counsel's performance prejudiced him at trial or that his appellate counsel's performance prejudiced his appeal. Therefore, neither attorney was ineffective. Accordingly, we affirm the judgment of the Court of Special Appeals.

22

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

Circuit Court for Baltimore City
Case No. 104310025
Argued: May 9, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 86

September Term, 2016

DONTA NEWTON

v.

STATE OF MARYLAND

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

Dissenting Opinion by Getty, J.

Filed: August 23, 2017

Respectfully, I dissent from the Majority's conclusion that Mr. Newton was not prejudiced by his trial counsel consenting to the presence of an alternate juror during deliberations. To the contrary, I would hold that, by consenting to this arrangement rather than objecting to it, trial counsel prejudiced Mr. Newton by requiring his appellate counsel to show on direct appeal that the alternate either actually participated in the deliberations or exerted a chilling effect on the regular jurors in order to reverse his conviction under *United States v. Olano*, rather than allowing appellate counsel to establish presumed prejudice under *Stokes v. State*. In addition, although the Majority does not reach the issue of whether trial counsel's performance was constitutionally deficient under *Strickland v. Washington*, I would hold that his performance was deficient because he consented to an arrangement that violated clearly established Maryland law, which had no potential to benefit his client. Therefore, I would hold that, with respect to his trial counsel, Mr. Newton has established both deficient performance and prejudice under *Strickland*, and thus Mr. Newton is entitled to postconviction relief.[1] Accordingly, I would reverse the judgment of the Court of Special Appeals, and reinstate the judgment of the postconviction court granting Mr. Newton a new trial.

> In order to prevail on a claim of ineffective assistance of counsel, a defendant must establish that trial counsel's performance was constitutionally deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. [668,] 687 [(1984)]; *Mosley* [*v. State*], 378 Md. [548,] 557 [(2003)].

---

[1] I agree with the Majority that Mr. Newton has waived the ability to challenge the trial court's error directly under the Uniform Postconviction Procedure Act. *See* Majority Slip Op. at 7 n.5.

In discerning whether counsel's performance was deficient, we start with the presumption that he or she "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690; *Bowers v. State*, 320 Md. 416, 421 (1990). Our review of counsel's performance is "highly deferential." *Kulbicki v. State*, 440 Md. 33, 46 (2014). We look to whether counsel's "representation fell below an objective standard of reasonableness." *Harris v. State*, 303 Md. 685, 697 (1985). We assess reasonableness as of "the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

To satisfy the prejudice prong of *Strickland*, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The ultimate inquiry is whether "'counsel's errors were so serious as to deprive [the petitioner] of a fair trial, a trial whose result is reliable.'" *Oken v. State*, 343 Md. 256, 284 (1996) (quoting *Strickland*, 466 U.S. at 687).

*State v. Smith*, 223 Md. App. 16, 26–27 (2015) (last alteration in original). I will begin with deficient performance.

Maryland Rule 4-311(b) provides that a jury in a criminal case "shall consist of 12 persons unless the parties stipulate at any time in writing or on the record that the jury shall consist of any number *less than 12*." (Emphasis added.) Rule 4-312(g)(3) provides, "When the jury retires to consider its verdict, the trial judge *shall* discharge any remaining alternates who did not replace another jury member." (Emphasis added.) No Maryland Rule "or statute permits *more than twelve* into the jury room during deliberations," *Stokes v. State*, 379 Md. 618, 633 (2004) (emphasis added), and the trial court's instruction to discharge any alternates at the start of deliberations is mandatory, not discretionary. *See Hayes v. State*, 355 Md. 615, 635 (1999) ("[A]n alternate juror who remains qualified to serve may be substituted for a regular juror who is properly discharged, until such time as

2

the jury enters the jury room to consider its verdict and closes the door. **We view the closing of the door as marking the point at which the ability to substitute ends**—the effective point at which we consider the jury to have commenced deliberations." (emphasis added)).

In *Stokes*, the trial court sent the alternate jurors into the jury room to deliberate during the guilt/innocence phase of a bifurcated trial, over defense objection. *Stokes*, 379 Md. at 623. After two hours of deliberations, the jury sent a note to the court asking if "alternates count," which prompted a discussion between the court and defense counsel about the role of the alternates. *Id.* Following this discussion, the trial court instructed the jury that the alternates were to return to the jury room with the seated jurors, but were not to participate in deliberations. *Id.* at 624–25. Instead, "the alternates were to be mere observers," so that they could step in in case one of the seated jurors was unable to continue with the second phase of the trial. *Id.* at 624. Defense counsel again objected to the presence of alternates in the jury room. *Id.* at 625.

This Court held "that the trial court erred in sending the alternate jurors into the jury room to deliberate on the guilt/innocence phase of the trial." *Id.* at 629; *see also id.* at 630 ("Once the additional jurors entered the jury room with the jurors to consider the verdict, and the deliberations commenced, the error could not be cured."). The Court noted that in Maryland, unlike in some other states, an alternate juror cannot be substituted for a seated juror "after deliberations have commenced." *Id.* at 630. Therefore, "[t]he deliberations of the regular jurors are of no concern to the alternates." *Id.* The Court further indicated that the presence of alternate jurors during deliberations, whether they participate or not,

3

constitutes error. *See id.* at 630–31 ("There can be no doubt that, despite his good intentions and attempt to cure the error, the judge erred by allowing the alternates to *attend any part* of the jury deliberations. The trial court clearly erred." (emphasis added) (footnote omitted)); *id.* at 629 n.4 ("The *presence* of alternate jurors in the jury room during deliberations is generally regarded as error." (emphasis added)); *id.* at 640 ("We hold that at any time an alternate is in the jury room *during deliberations* he participates by his presence and, whether he says little or nothing, his presence will void the trial." (quoting *State v. Bindyke*, 220 S.E.2d 521, 533 (N.C. 1975)).

Thus, at the time of Mr. Newton's trial in 2006, clearly established Maryland law provided that an alternate juror cannot be substituted for a seated juror after deliberations have commenced, and that the presence of an alternate juror during deliberations constitutes error. Despite this clearly established law, Mr. Newton's trial counsel, the prosecutor, and the trial judge—all apparently ignorant of the law—agreed to allow an alternate to be present in the jury room during deliberations at Mr. Newton's second trial. The reason for this arrangement was that Mr. Newton's first trial had ended in a mistrial due to juror absences, and everyone wanted to avoid this result in the second trial. The trial judge wanted the alternate to be present during deliberations so that she "could become the 12th juror" if one of the seated jurors was unable to continue after deliberations had commenced. As explained above, however, Maryland law prohibits the substitution of an alternate juror "after deliberations have commenced." *Id.* at 630; *Hayes*, 355 Md. at 635.

As the Court of Special Appeals recognized in its opinion below, "[p]ursuant to *Stokes*, there is no question that it is error to send an alternate juror into the jury room

4

during deliberations, even with instructions not to participate in deliberations." *State v. Newton*, 230 Md. App. 241, 265 (2016). However, the intermediate appellate court then concluded that agreeing to this procedure did not constitute deficient performance on the part of Mr. Newton's trial counsel because it was "a tactical decision that he reasonably believed would be beneficial to his client." *Id.* at 271. Respectfully, I disagree with this conclusion.

To determine whether trial counsel's performance was constitutionally deficient under *Strickland*, "[w]e look to whether counsel's 'representation fell below an **objective** standard of reasonableness.'" *Smith*, 223 Md. App. at 26 (emphasis added) (quoting *Harris*, 303 Md. at 687). Although the Court of Special Appeals quoted this proposition in its Standard of Review section, *see Newton*, 230 Md. App. at 250, I believe the intermediate appellate court actually applied a *subjective* standard of reasonableness to Mr. Newton's trial counsel's performance. Regardless of whether trial counsel may have "reasonably believed" that his strategy of allowing an alternate in the jury room during deliberations would be beneficial to his client, it was not, in fact, reasonable for trial counsel to so believe.

Under clearly established Maryland law at the time of Mr. Newton's trial, there was no possible scenario under which allowing the alternate to be present during jury deliberations could have benefitted Mr. Newton, because substituting the alternate after deliberations had commenced was, and still is, prohibited. Thus, I simply cannot agree with the intermediate appellate court that this "was a strategy that could have worked to the benefit of [Mr. Newton]," when it is admittedly "one not sanctioned by law." *Id.* at

5

270. Instead, trial counsel's consent to the alternate's presence during jury deliberations was the result of his ignorance of the law, which he admitted at Mr. Newton's postconviction hearing. *See Coleman v. State*, 434 Md. 320, 338 (2013) ("We do not see how trial counsel's failure to object because of his ignorance of the law could possibly be seen as sound trial strategy or a strategic choice."). Therefore, I would hold that trial counsel's "representation fell below an objective standard of reasonableness," *Harris*, 303 Md. at 697, and thus Mr. Newton has established the deficient performance prong of his ineffective assistance of counsel claim.

Turning to prejudice, I agree with the Majority that Mr. Newton must demonstrate that trial counsel's deficient performance prejudiced his defense by establishing either (1) that but for the deficient performance, there is a substantial possibility that the result of the proceeding would have been different, or (2) that the deficient performance rendered the proceeding fundamentally unfair or unreliable. *See* Majority Slip Op. at 12; *Coleman*, 434 Md. at 340–41. In other words, I agree that this case does not fall into any of the scenarios described in *United States v. Cronic*, 466 U.S. 648 (1984), where the prejudice prong of an ineffective assistance of counsel claim is presumed.

However, I disagree with the Majority's conclusion that Mr. Newton did not establish that his trial counsel's deficient performance rendered the proceeding fundamentally unfair. In assessing fundamental fairness, the Majority draws a distinction between two cases in which alternates were present in the jury room during deliberations: *Olano* and *Stokes*. *See* Majority Slip Op. at 13–17. Both cases were direct appeals, not postconviction ineffective assistance of counsel claims.

6

In *Olano*, "the defendants' attorneys *agreed* to let alternates sit in on deliberations, and the trial court instructed them not to participate." Majority Slip Op. at 15 (emphasis added) (citing *United States v. Olano*, 507 U.S. 725, 728–29 (1993)). When the defendants challenged this arrangement on direct appeal, the Supreme Court engaged in a plain error analysis under Federal Rule of Criminal Procedure 52(b). *Olano*, 507 U.S. at 737. Under Rule 52(b), a defendant must show that the error "affected substantial rights" in order to qualify for plain error review. *Id.*

The Supreme Court assumed "*arguendo* that certain errors affect substantial rights independent of prejudice," but held that "the instant violation . . . is not such an error." *Id.* (internal quotation marks and brackets omitted). The Court also declined to "presume prejudice for purposes of the Rule 52(b) analysis here." *Id.* at 740. The Court then emphasized,

> Whether the Government could have met its burden of showing the absence of prejudice, under Rule 52(a) [(harmless error review)], if respondents had not forfeited their claim of error, is not at issue here. This is a plain-error case, and it is respondents who must persuade the appellate court that the deviation from Rule 24(c)[2] was prejudicial.

*Id.* at 741.

---

[2] Unlike the Maryland Rule, Federal Rule of Criminal Procedure 24(c)(3) permits the trial judge to "retain alternate jurors after the jury retires to deliberate." But, the judge "must ensure that a retained alternate does not discuss the case with anyone until that alternate replaces a juror or is discharged. If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew." This Court may wish to consider the adoption of a similar provision in the Maryland Rules that would permit the retention of alternate jurors during deliberations in order to provide greater flexibility to trial judges.

In *Stokes*, the trial court sent alternate jurors into the jury room during deliberations *over defense counsel's objection*. *Stokes*, 379 Md. at 623. When the defendant challenged this procedure on direct appeal, this Court held that "[p]rejudice must be presumed where alternates breach the sanctity of the jury room." *Id.* at 638. The *Stokes* Court distinguished *Olano* by stating that "the plain error rule applies when alternate jurors join regular jurors in the jury room when jury deliberations begin, *without objection*. The instant case is not a plain error case; appellant objected to the additional jurors and the issue was preserved for appellate review." *Id.* at 632 n.8.

Thus, when an alternate is allowed in the jury room during deliberations *over defense objection*, prejudiced is presumed under *Stokes*. But, when an alternate is allowed in the jury room during deliberations *without objection*, or *with defense counsel's consent*, the defendant must demonstrate actual prejudice under a plain error analysis pursuant to *Olano*. Applying this distinction to Mr. Newton's case, because his trial counsel consented—rather than objected—to the alternate's presence in the jury room during deliberations, his appellate counsel would have been required to establish actual prejudice under plain error review if she had raised the error on direct appeal. After apparently recognizing this distinction, the Majority holds that "the presence of an alternate juror in deliberations does not clear the high bar of fundamental unfairness—at least not in this case." Majority Slip Op. at 16.

But this is not a plain error case, as in *Olano*. This is an ineffective assistance of counsel case. Thus, Mr. Newton should not be required to establish that the alternate's presence in the jury room was sufficient to "chill" the deliberations. *See* Majority Slip Op.

8

at 16. Instead, this Court must determine whether Mr. Newton's trial counsel's deficient performance prejudiced his defense. In other words, the Court should not be considering whether the alternate's presence in the jury room during deliberations prejudiced Mr. Newton, which was the issue in *Stokes* and *Olano*. The Court should be considering whether trial counsel's **consenting** to the alternate's presence in the jury room during deliberations prejudiced Mr. Newton.

Indeed, it is precisely because Mr. Newton would have been required, on direct appeal, to meet the higher threshold of actual prejudice under *Olano*, rather than presumed prejudice under *Stokes*, that I would hold that trial counsel's deficient performance prejudiced Mr. Newton. Because trial counsel failed to object (and even affirmatively consented) to the presence of an alternate during jury deliberations, appellate counsel was handed a much weaker argument to pursue on direct appeal. Rather than simply showing that an alternate was present during deliberations and therefore prejudice must be presumed under *Stokes*, appellate counsel would have been required to raise the error in the context of plain error review, and would have been required to establish actual prejudice under *Olano*.[3]

---

[3] Because appellate counsel would have been faced with such a stringent standard to satisfy on direct appeal, I agree with the Majority that Mr. Newton was not prejudiced by appellate counsel's failure to raise this argument on direct appeal. *See* Majority Slip Op. at 22. Indeed, I agree with the Majority that, because appellate counsel would have been forced to raise the issue in the context of plain error review, "a Maryland appellate court reviewing [Mr.] Newton's case . . . would likely not find the presence of the alternate to be plain error." *Id.*

9

In my view, because trial counsel's deficient performance deprived Mr. Newton of a near-certain reversal on direct appeal, such deficient performance rendered Mr. Newton's proceeding fundamentally unfair.  Therefore, I would hold that Mr. Newton has established the prejudice prong of his ineffective assistance of counsel claim.  Having established both deficient performance and prejudice under *Strickland* with respect to trial counsel, I would hold that Mr. Newton is entitled to postconviction relief.  Accordingly, I would reinstate the judgment of the postconviction court granting Mr. Newton a new trial.